Gary Dwayne GILMORE, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–00–051CR.

Court of Appeals of Texas,
Beaumont.

Submitted Jan. 23, 2001.

Decided Feb. 14, 2001.

Richard Martin, P. Canlas, for Gary Gimore.

Gail Kikawa McConnell, Assistant District Attorney, for the State.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

WALKER, Chief Justice.

Appellant was indicted for having committed the felony offense commonly referred to as Assault of a Public Servant. *See* Tex.Pen.Code Ann. § 22.01(a)(1), (b)(1) (Vernon Supp.2001). The indictment reads, in pertinent part, that appellant, "on or about June 19, 1999, ... did then and there intentionally, knowingly or recklessly cause bodily injury to Lt. Concord, a public servant lawfully discharging an official duty, by striking Lt. Concord in the head with Defendant's fist, and the Defendant knew that Lt. Concord was a public servant ... [.]" Said indictment included three enhancement paragraphs raising appellant's punishment status to that of a habitual offender. Following a finding of guilt by the jury, the trial court sentenced appellant to confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of twenty-five (25) years. Two issues alleging trial error are raised for our consideration, *viz:*

> 1) The trial judge committed reversible error by overruling Appellant's objection to the submitted charge and denying his request for an instruction on the lessor [sic] included offense of resisting arrest.
> 2) The trial judge committed reversible error by overruling Appellant's objection to the submitted charge and denying his request for an instruction on self-defense.

The record reflects that the State called as its only witness the complainant, Lt. Clint Concord of the City of Woodbranch Police Department, in Montgomery County. The record further reflects that appellant testified in his defense as did his uncle, Jackie Lynn Fulcher. Almost all of the facts of the case were contested by the parties.

The State's lone witness, Lt. Concord, testified that, while on routine patrol, he stopped appellant's vehicle for having run through a stop sign. Appellant was driving the vehicle and his uncle, Fulcher, was in the front passenger seat. According to Lt. Concord, after appellant stopped his vehicle, he (appellant) exited but was asked by Lt. Concord to remain in the vehicle. Instead of re-entering his vehicle, appellant leaned into the driver's-side window and appeared to be reaching for something. Lt. Concord exited his patrol vehicle fearing for his safety. Appellant withdrew from the driver's-side window, faced Lt. Concord, threw his hands in the air, started "hollering" at Lt. Concord, and asked, "Why did you pull me over?" Before Lt. Concord could identify himself to appellant, appellant began walking toward Lt. Concord in a threatening manner. Fearing for his safety, Lt. Concord began walking backward, telling appellant to "stay back," while at the same time reaching for his pepper spray. As Lt. Concord braced himself against his patrol unit, he momentarily took his eyes off appellant, and when he looked up again, appellant's fist struck Lt. Concord directly on his right eye. A scuffle then ensued with both men falling to the ground. Appellant managed to get to his feet and then ran towards some railroad tracks approximately 200 yards away. Another scuffle took place at the tracks when appellant fell on some large rocks surrounding the tracks. As Lt. Concord was spraying appellant with the pepper spray in order to attempt

to handcuff appellant, the spray blew back into Concord's face and temporarily blinded him. Appellant kicked Concord in the chest area causing Concord to fall backward striking his head on one of the tracks. At that point, Concord blacked out momentarily. Appellant managed to get to his feet and run into a wooded area.

Appellant's version of the events surrounding his encounter with Lt. Concord had little in common with Concord's testimony. At the outset, appellant contended that he did not commit any traffic offense. He also stated that when Lt. Concord told him to get back into his vehicle, appellant complied. Appellant started smoking a cigarette while waiting for Lt. Concord. Appellant further testified that at some point, Lt. Concord approached appellant's vehicle and asked appellant for his "ID." When appellant told Concord he had no identification, Concord asked appellant to get out of the vehicle. At this point, appellant stated that Lt. Concord told him "to throw [his] GD cigarette out." When appellant requested that Lt. Concord not talk to him that way, Concord again told appellant "in the same tone" to throw the cigarette out. According to appellant, when he did not comply with Concord's request, Concord grabbed him by the head, threw him to the ground, and began kicking him. At that point, appellant stated that all he (appellant) was doing was trying to get away from Concord's feet by rolling around on the ground. At no time did appellant hit, push, or kick Lt. Concord. At some point, appellant managed to get to his feet and to run toward the railroad tracks. Appellant testified that after he fell on the tracks, Lt. Concord caught him and began kicking him again. Concord then pulled out his pepper spray and sprayed both appellant and himself. Appellant stated that although neither he nor Concord could see each other at that point, he (appellant) managed to get to his feet and run into a wooded area on the other side of the tracks. Appellant further testified that at no time did Lt. Concord inform him that he was under arrest.

The testimony of appellant's uncle, Jackie Lynn Fulcher, essentially mirrored that of appellant. Concord did not approach or identify Fulcher during the encounter, and Fulcher testified that he (Fulcher) remained in appellant's vehicle during the entire time appellant and Concord were otherwise engaged. Fulcher observed Concord walk back from the railroad tracks with other police personnel after appellant had fled into the wooded area. Fulcher then observed Concord and the other police officers huddle together, heard the officers tell Concord to lie down beside the vehicles, and heard them call an ambulance for Concord. Fulcher believed that this was just a ruse on the part of police personnel for Concord to claim he was injured when he really was not.

 Appellant contends in his first issue that he was entitled to a jury instruction on the lesser included offense of resisting arrest. Relying on *Sutton v. State*, 548 S.W.2d 697 (Tex.Crim.App.1977), appellant contends, and the State agrees, that resisting arrest is a lesser included offense of assault on a public servant. The precise holding in *Sutton* is stated as follows:

> We find the requirements of Sec. 38.03, [Resisting Arrest] that the accused prevent an officer from effecting an arrest by using force, *can* be established by the same facts necessary under Sec. 22.02(a)(2) [formerly Aggravated Assault of a Peace Officer] to show the accused caused bodily injury to a peace officer in the lawful discharge of official duty.

*Id.* at 699. [emphasis supplied] However, a trial court must charge the jury on a lesser

included offense, in addition to the charged offense, *only* if (1) proof of the lesser offense is included within the proof necessary to establish the offense charged, and (2) some evidence exists in the record that would permit a jury rationally to find the defendant guilty, if at all, of only the lesser offense. *See Rousseau v. State,* 855 S.W.2d 666, 673 (Tex.Crim.App.1993).

■ In applying the test in *Rousseau,* we do not appreciate the first prong to be an automatic "given" in the instant case simply because other courts have substituted *Sutton's* "can" with the words "is always." We say this because in *Bartholomew v. State,* 871 S.W.2d 210, 212 (Tex. Crim.App.1994), the Court reiterated its consistent holding that whether an offense is a lesser included offense of the charged offense requires a case-by-case determination.[1] Subsequently, in *Jacob v. State,* 892 S.W.2d 905 (Tex.Crim.App.1995), the Court provided a test to determine if an offense is a lesser included offense to the one charged in the indictment or information. The Court in *Jacob* indicated that the starting point in any analysis of lesser included offenses is Tex.Code Crim.Proc. Ann. art. 37.09(1) (Vernon 1981), which defines a lesser included offense as one "established by proof of the same or less than all the facts required to establish the commission of the offense charged." This is basically accomplished by looking at (1) the elements of the offense actually charged, (2) the statutory elements of the offense sought as a lesser included offense, and (3) the proof presented at trial to show the elements of the charged offense. *Jacob,* 892 S.W.2d at 907–08. The focus of this three-prong test is on what is meant by the phrase "facts required," as it appears in art. 37.09(1). The Court in *Jacob*

explained the "facts required" proof in the following way:

> The State argues this focuses on the evidence the State presented to prove the charged offense. But such interpretation negates the language of Article 37.09(1) by changing "facts required" into "facts presented." "Facts required" means the evidence legally required to prove the elements. For instance, the State may prove more than is legally required by also proving a different offense than the charged offense just because of the facts in the particular case. The constitutional validity of Article 37.09 rests in part on its reference to the offense charged and to the restricted or reduced culpability of the lesser included offense as compared to the offense charged. *Day,* 532 S.W.2d at 315. Otherwise a defendant could be convicted of offenses not subsumed in the charged offense but shown by the evidence presented. That is why a lesser included offense is defined with reference to the facts "required" to establish the charged offense rather than to facts presented at trial.

*Id.* at 908.

A person commits assault of a public servant under § 22.01(a)(1), (b)(1) if he (1) intentionally, knowingly, or recklessly, (2) causes bodily injury, (3) to a person the actor knows is a public servant, (4) while the public servant is lawfully discharging an official duty. Under Tex.Pen.Code Ann. § 38.03(a) (Vernon 1994), and under the pertinent facts of the instant case, a person commits "resisting arrest" when he (1) intentionally, (2) prevents or obstructs, (3) a person the actor knows is a peace officer,

---

1. Citing *Livingston v. State,* 739 S.W.2d 311, 336 (Tex.Crim.App.1987); *Broussard v. State,* 642 S.W.2d 171, 173 (Tex.Crim.App.1982); *Ex parte McClelland,* 588 S.W.2d 957, 959 (Tex.Crim.App.1979); *Hazel v. State,* 534 S.W.2d 698, 700 (Tex.Crim.App.1976); and *Day v. State,* 532 S.W.2d 302, 315–16 (Tex. Crim.App.1975) (opinion on rehearing).

(4) from effecting an arrest, search, or transportation of the actor, (5) by using force against the peace officer. In examining the elements of the alleged lesser included offense (resisting arrest), we see several elements that are not functionally the same or less than those required to prove the charged offense (assault of a public servant). The assault offense includes a reckless mental state whereas resisting arrest proscribes only intentional conduct. The assault offense also requires bodily injury be inflicted upon the public servant whereas resisting arrest may occur with no injury at all to the peace officer involved. Finally, resisting arrest requires proof that the peace officer be in the process of effecting an arrest, search, or transportation of the actor when the actor uses "force" to "prevent or obstruct" the attempted conduct; in contrast, the assault offense requires the public servant be "lawfully discharging an official duty," which may or may not involve an arrest. We see from the above comparison that the offense of resisting arrest is not, at least as a matter of law, a lesser included offense of assault of a public servant.

We, therefore, turn to an examination of the "evidence legally required" to prove assault of a public servant as charged in the instant indictment in order to determine if said evidence included proof of the offense of resisting arrest. *Jacob*, 892 S.W.2d at 908. Recall that the indictment required the State to prove that appellant "intentionally, knowingly, or recklessly caused bodily injury to Lt. Concord, a public servant lawfully discharging an official duty, by striking Lt. Concord in the head with [appellant's] fist, and the [appellant] knew that Lt. Concord was a public servant, ..." As set out above, Concord's testimony indicated that within minutes after stopping appellant for the traffic offense, appellant attacked him and struck Concord in the eye. Both Concord and

appellant testified that at no time did Concord indicate that he was arresting appellant. Appellant's testimony essentially indicated that he never touched Concord, that Concord knocked him to the ground, and that appellant spent the rest of the time trying to avoid being kicked and beaten by Concord. We find that the "facts required to establish" the charged offense do not also establish proof of resisting arrest. It is certainly true that a variety of extraneous events were elicited from the witnesses which included evidence of a chase and a subsequent encounter at the railroad tracks between Lt. Concord and appellant. However, because those acts were not "required to establish" the charged offense, they would not be evidence of any alleged lesser included offense of the charged offense. *Id.* The first *Rousseau* prong has not been met. Issue one is overruled.

 Appellant's second, and final, issue complains of the trial court's refusal to include a self-defense instruction to the jury. "The defendant has the burden of producing (going forward with) sufficient evidence to raise the issue of self-defense." *Shelvin v. State,* 884 S.W.2d 874, 878 (Tex. App.—Austin 1994, pet. ref'd). The State, however, is not required to affirmatively produce evidence to refute the self-defense claim, but to prove its case beyond a reasonable doubt. *Id.*

 In his brief, appellant assembles a "crazy-quilt" rendition of the evidence before the jury in order to show that a self-defense instruction was warranted. While we agree with the general proposition that when evidence from any source raises a defensive issue, and the defendant properly requests a jury charge on that issue, the trial court must submit the issue, *see Muniz v. State,* 851 S.W.2d 238, 254 (Tex.Crim. App.1993), we firmly believe that when the

defensive issue in question is one contained in Chapter Nine of the Penal Code, and the defendant fails to admit to having committed the charged act, he is not entitled to an instruction on self-defense. This is so because Chapter Nine of the Penal Code is titled "Justification Excluding Criminal Responsibility." It includes justifications such as "necessity" and "public duty," as well as self-defense. As the title of the chapter indicates, these defenses have traditionally been recognized as justification for conduct that would otherwise be criminal.

The logical corollary to being entitled to an instruction informing the jury that the charged conduct was excusable under the law is that the accused admit to having committed the charged conduct in the first place. If a defendant, as did appellant in the instant case, categorically denies that he even touched the victim of an alleged assault, he has engaged in no conduct which needs justifying. He has essentially denied that the alleged criminal act ever took place. We find the case of *Sanders v. State*, 707 S.W.2d 78, 81 (Tex.Crim.App. 1986), to be still quite viable for this proposition, although we do recognize that *Willis v. State*, 790 S.W.2d 307, 314 (Tex.Crim. App.1990), retreated from this position *vis-a-vis* non-justification defenses.

We find strength in our position from a careful reading of the more recent case of *Young v. State*, 991 S.W.2d 835, 839 (Tex. Crim.App.), *cert. denied*, 528 U.S. 1068, 120 S.Ct. 618, 145 L.Ed.2d 513 (1999). In *Young*, the defendant was convicted of attempted murder and raised ineffective assistance of counsel on appeal. *Id.* at 836. The basis for the ineffective assistance claim was that trial counsel failed to request a jury instruction on the justification defense of necessity. The State's witnesses testified to various *intentional* acts committed by the defendant which caused

a vehicle, in which the defendant and the victims were riding, to crash into a set of gasoline pumps. The defendant testified that his arm *accidently* hit the steering wheel of the vehicle when one of the victims grabbed his (defendant's) arm, and that he (the defendant) neither put his foot on the gas pedal nor grabbed the steering wheel, and made no verbal threats to the victims. *Id.* at 836–37.

In finding no ineffectiveness, the Court held that the defendant was not entitled to an instruction on necessity at all because he did not present the defense of necessity. *Id.* at 839. Regarding the testimony, the Court noted the following:

> While trial counsel argued Appellant acted reasonably, according to Appellant's testimony regarding his actions, and that these actions were necessary to save his life, such an argument does not present the defense of necessity. To raise necessity, Appellant must admit he committed the offense and then offer necessity as a justification. Here, Appellant did not admit to attempted murder, albeit one that was justified by the defense of necessity. Appellant argued he did not commit the offense because he did not have the requisite intent and he did not perform the actions the State alleged. Appellant was therefore not entitled to a jury instruction on the defense of necessity.

*Id.*

In the instant case, we are faced with what amounts to the same situation the Court in *Young* faced: an accused who denied having engaged in the charged conduct. Appellant even denied committing the traffic offense for which Lt. Concord initially stopped him. Under the record before us, we find that appellant did not sustain his burden of producing or going forward with evidence raising self-defense. The trial court did not err in denying

appellant's request for a self-defense instruction to the jury. Issue two is overruled. The judgment and the sentence of the trial court are affirmed.

AFFIRMED.

BURGESS, J., dissenting with opinion.

BURGESS, Justice, dissenting.

I respectfully dissent. I believe the trial court erred in refusing to charge the jury on resisting arrest. The majority acknowledges that resisting arrest "can be" a lesser included offense of assault of a peace officer, but finds the evidence does not support proof of resisting arrest.

Jurors are not required to believe 100% of either side. They may pick and choose, depending upon the credibility and believability of the various witnesses. Under the evidence, outlined by the majority, at the close of the case, a jury could have believed that Gilmore did not initiate the physical contact, but he did resist arrest. Therefore, it was error to refuse the instruction. *Accord Sutton v. State*, 548 S.W.2d 697 (Tex.Crim.App.1977). Consequently, I would reverse and remand for a new trial.