In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-03-351 CR


____________________



CAROLYN MODICA, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the County Court at Law No. 3


Jefferson County, Texas


Trial Cause No. 227,291






OPINION


 Appellant, Carolyn Modica, was convicted by a jury for having committed a Class
C misdemeanor offense of Assault. See Tex. Pen. Code Ann. § 22.01(a)(3), (c) (Vernon
Supp. 2004). The trial court assessed a fine of $200 and costs. Eight issues are raised for
our consideration. We will recount facts elicited at trial only when necessitated by the
issue under consideration.

 Issue one reads: "The trial court erred by holding in its judgment only that
defendant is convicted of 'City Appeal-Other,' which does not constitute an offense under
Texas law, and therefore, said judgment is void, and appellant is correspondingly entitled
to appropriate relief." In Nix v. State, 65 S.W.3d 664, 668 (Tex. Crim. App. 2001), the
Court of Criminal Appeals noted that a judgment is void only in very rare situations,
"usually due to a lack of jurisdiction." The Court went on to enumerate the circumstances
as follows:

 A judgment of conviction for a crime is void when (1) the document
purporting to be a charging instrument (i.e. indictment, information, or
complaint) does not satisfy the constitutional requisites of a charging
instrument, thus the trial court has no jurisdiction over the defendant, (2) the
trial court lacks subject matter jurisdiction over the offense charged, such as
when a misdemeanor involving official misconduct is tried in a county court
at law, (3) the record reflects that there is no evidence to support the
conviction, or (4) an indigent defendant is required to face criminal trial
proceedings without appointed counsel, when such has not been waived, in
violation of Gideon v. Wainwright[, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d
799 (1963)]. While we hesitate to call this an exclusive list, it is very nearly
so. 


Id. (footnotes omitted). In the instant case, none of the four enumerated situations appear
in the record. The assault charge against appellant stemmed from the filing of a complaint
with the municipal court of the City of Beaumont by the victim, [M.E.P.]. Therefore, the
complaint is the document purporting to be the charging instrument. See Zulauf v. State,
591 S.W.2d 869, 871 n.3 (Tex. Crim. App. 1979). The complaint lists the offense as
"Assault (Simple)," and alleges that on or about December 21, 2000, appellant did
"intentionally, or knowingly cause physical contact with [M.E.P.] when he/she knew or
should reasonably have believed that said [M.E.P.] would regard the contact as offensive
or provocative." Furthermore, the trial court's written instructions to the jury listed
appellant's charge as "assault," and set out the following language in the application
paragraph: 

 Therefore, if you believe from the evidence beyond a reasonable
doubt that the defendant, CAROLYN MODICA, did in Beaumont, Jefferson
County, Texas, on or about the 21st day of December, 2000, intentionally
or knowingly cause physical contact with [M.E.P.] when she knew or should
reasonably have believed that said [M.E.P.] would regard the contact as
offensive or provocative, you will find the defendant guilty. 

 Unless you so find beyond a reasonable doubt or if you have a
reasonable doubt thereof, you will find the defendant not guilty.


 At any rate, we agree with the State that the "City Appeal - Other" language shown
on the face of the judgment is merely an irregularity that can be corrected by a judgment
nunc pro tunc or by this Court on appeal. First, it must be remembered that the written
judgment is merely a record of events which have occurred in fact; the written judgment
is not itself the conviction but evidence, among other things, that a conviction has
occurred. See Jones v. State, 795 S.W.2d 199, 202 (Tex. Crim. App. 1990). And while
it is true that an appeal may not be taken until a written judgment has been entered, it is
not the signing of the judgment that constitutes the "appealable event"; it is the
pronouncement of sentence in open court that is the appealable event. See Thompson v.
State, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003); Coffey v. State, 979 S.W.2d 326,
328 (Tex. Crim. App. 1998); Rodarte v. State, 860 S.W.2d 108, 109-10 (Tex. Crim. App.
1993). As the judgment in the instant case is not void, we overrule issue one. 

 Issue two states, "The trial court erred as a matter of law by proceeding to trial
without the appointed attorney pro tem, Mr. Holmes, having first taken the mandatory oath
required by Texas Code of Criminal Procedure Article 2.07(c)." The record reflects that
the trial court appointed a "Criminal District Attorney Pro Tem" to prosecute appellant and
the "Oath Of Office" portion of said order does not appear to have been executed. While
appellant implicitly concedes in her brief that no objection was raised to the failure of the
appointed prosecutor to take the oath of office, she essentially contends that being
prosecuted by a sworn prosecutor is a "systemic" and "absolute" right possessed by her
and, therefore, unwaivable. In Marbut v. State, 76 S.W.3d 742, 750 (Tex. App.--Waco
2002, pet. ref'd), the Court found the provisions contained in Tex. Code Crim. Proc.
Ann. art. 2.07 (Vernon Supp. 2004), "[do] not concern the jurisdiction of the trial court
or the constitutionality of a statute." Marbut, 76 S.W.3d at 750. The Court also found
that a defendant's right to have a prosecutor qualified under article 2.07 to represent the
State is not a right so fundamental to the proper functioning of our adjudicatory process
that it cannot be forfeited. Id. (quoting from Marin v. State, 851 S.W.2d 275, 278 (Tex.
Crim. App. 1993)). 

 Although appellant vigorously argues her fundamental constitutional and statutory
rights were violated when the appointed prosecutor apparently neglected to take the oath
of office, she fails to demonstrate the alleged error was preserved for appellate review by
citing to Marin v. State or any of its progeny. See Marin, 851 S.W.2d 275 (Tex. Crim.
App. 1993). It is imprudent, to say the least, for an appellant to raise a "fundamental" or
"systemic" rights violation, in the face of a failure to object at trial, without attempting to
place said rights in the Marin "continuum." As the Court of Criminal appeals recently
reiterated:

 Marin has been a watershed decision in the law of error-preservation. After
Marin we have held that a right that formerly was thought to be "waivable
only" actually requires an objection at trial. We have held that some
requirements that were formerly held to be absolute requirements are not. 
We have held that a party may be estopped from relying on an absolute
requirement. On the other hand, we have recognized three more absolute
requirements since Marin: a constitutional requirement that a district court
must conduct its proceedings at the county seat, the constitutional prohibition
of ex post facto laws, and certain constitutional restraints on the comments
of a judge. 


See Sanchez v. State, 120 S.W.3d 359, 365-66 (Tex. Crim. App. 2003) (quoting from
Saldano v. State, 70 S.W.3d 873, 888-89 (Tex. Crim. App. 2002) (citations omitted)).

 The system of adjudication at work in Texas contains rules of three distinct types:
(1) absolute requirements and prohibitions; (2) rights of litigants which must be
implemented by the system unless expressly waived; and (3) rights of litigants which are
to be implemented upon request. Marin, 851 S.W.2d at 279. The particular provision in
question is found in Tex. Code Crim. Proc. Ann. art. 2.07(c) (Vernon Supp. 2004),
which provides: "If the appointed attorney [pro tem] is not an attorney for the state, he is
qualified to perform the duties of the office for the period of absence or disqualification
of the attorney for the state on filing an oath with the clerk of the court." On its face,
article 2.07(c) does not appear to be the type of evidentiary or procedural rule that belongs
to an accused and which must be protected by the system unless expressly waived, unlike
the language of the rule at issue in Marin. (1) Marin, 851 S.W.2d at 277, 279. Nor can we
say that article 2.07(c) is such a requirement that "[i]mplementation of th[is] requirement[]
is not optional and cannot, therefore, be waived or forfeited by the parties." Id. at 279. 
We have found no cases which have raised the provisions of article 2.07(c) to a "systemic
requirement." We find that the provisions of article 2.07(c) fall into that class of Marin's
rules and procedures that are forfeited if not insisted upon by objection, request, motion,
or some other behavior calculated to call its lack of implementation to the attention of the
"system's impartial representative, usually the trial judge." Marin, 851 S.W.2d at 279. 
As appellant failed to complain either at trial or in her motion for new trial, we find the
issue is not preserved for appellate review. Tex. R. App. P. 33.1(a). Issue two is
overruled.

 Issue three is presented to us as follows: 

 The costs of court assessed cannot be enlarged upon on an appeal
from a municipal court conviction of a "fine only" citation offense where the
additional assessments for items such as fugitive apprehension and
correctional management do not correspond to the purposes behind creating
said offense, and similar assessments are not made by the municipal court,
thus causing the county court entertaining the appeal to assess an excessive
penalty, in violation of the Eighth Amendment of the United States
Constitution, and Article I, § 13, of the Texas Constitution, and necessitating
that these parts of the order be vacated.


 Once again, the record reflects no objection was made to the trial court of the
various assessments contained in the court costs. Appellant appears to be under the
mistaken belief that the proceeding in the County Court at Law was an "appeal" from the
proceeding in the municipal court. The Code of Criminal Procedure provides that in
appeals from a justice or municipal court, the trial must be de novo, unless the appeal is
taken from a municipal court of record and the appeal is based on error reflected in the
record. See Tex. Code Crim. Proc. Ann. art. 45.042(b) (Vernon Supp. 2004). It also
provides that in all appeals to a county court from justice or municipal courts, other than
municipal courts of record, the trial must be de novo in the trial in the county court, the
same as if the prosecution had originally been commenced in that court. See Tex. Code
Crim. Proc. Ann. art. 44.17 (Vernon Supp. 2004). In Title 2, Chapter 102 of the Texas
Code of Criminal Procedure, there are various costs and fees assessed to defendants upon
conviction for criminal offenses ranging from "fine-only" crimes to felonies. See Tex.
Code Crim. Proc. Ann. arts. 102.005 & 102.075 (Vernon Supp. 2004). (2) Chapter 103
of Title 2 also contains a provision to be utilized when a defendant believes erroneous costs
have been assessed. See Tex. Code Crim. Proc. Ann. art. 103.008 (Vernon Supp.
2004). 

 Appellant, in effect, attempts to again couch this issue in terms of an unwaivable
violation of constitutional rights. We reiterate that except for complaints involving
systemic (or absolute) requirements, or rights that are waivable only, which are not
involved here, all other complaints, whether constitutional, statutory, or otherwise, are
forfeited by failure to comply with Tex. R. App. P. 33.1(a); see also Mendez v. State, 138
S.W.3d 334, 342 (Tex. Crim. App. 2004). The proper assessment of court costs are
neither a systemic requirement nor a waivable-only right. By failing to call the trial
court's attention to any alleged improper court costs, appellant has forfeited review of the
issue on appeal. Issue three is overruled.

 Appellant presents and argues issues four, five, and six together. Issues four and
five provide the following: 

 Issue Four: The trial court erred by allowing the prosecutor to
improperly comment to the jury in closing argument, thereby denying
appellant her right to a fair trial under the Sixth Amendment of the United
States Constitution.


 Issue Five: The trial court erred by allowing the prosecutor to
improperly comment to the jury by misstating applicable law, the cumulative
effect of which prevented appellant from receiving a fair trial under the Sixth
Amendment of the United States Constitution.


 We initially note that appellant's argument under these issues, along with the
authorities cited, is woefully inadequate. An appellant seeking reversal of her conviction
on the basis of a Sixth Amendment violation must allege the basis for a Sixth Amendment
claim, such as that the error deprived her of her right to confront witnesses, or deprived
her of the assistance of counsel for her defense. See generally Bishop v. State, 85 S.W.3d
819, 822 (Tex. Crim. App. 2002). See also Faretta v. California, 422 U.S. 806, 818, 95
S.Ct. 2525, 45 L.Ed.2d 562, 572 (1975). (3) Instead, citing to Cortez v. State, 683 S.W.2d
419, 420 (Tex. Crim. App. 1984), appellant argues, "a fair trial cannot be had if it is not
free from improper jury argument." An examination of Cortez indicates this "fair trial"
observation was taken from Richardson v. State, 257 S.W.2d 308 (Tex. Crim. App. 1953). 
Cortez, 683 S.W.2d at 420. A reading of Richardson does turn up the statement:

 The law provides for and presumes a fair trial free from such
arguments as above quoted, and we do not think that this defendant has had
a fair trial with such denunciations of the district attorney ringing in the ears
of the jury who tried him. 


Richardson, 257 S.W.2d at 309. However, there is absolutely no authority - - statutory,
constitutional, rule, or common law - - cited in the entire Richardson opinion. Therefore,
we feel appellant's "fair trial" argument, like the "'mandatory statute' mantra," is "based
on questionable lineage and is inconsistent with more recent precedent[.]" See Hawkins
v. State, 135 S.W.3d 72, 78 (Tex. Crim. App. 2004).

 Additionally, appellant's argument and authorities blur the distinct line between the
determination of error and harm. See Hawkins, 135 S.W.3d at 76 ("A harm analysis is
employed only when there is error, and ordinarily, error occurs only when the trial court
makes a mistake.") We must initially decide whether the jury arguments in question were
improper. Jury argument must be confined to four permissible areas: (1) summation of
the evidence; (2) reasonable deductions from the evidence; (3) an answer to the argument
of opposing counsel; or (4) a plea for law enforcement. Wilson v. State, 938 S.W.2d 57,
59 (Tex. Crim. App. 1996); Alejandro v. State, 493 S.W.2d 230, 231 (Tex. Crim. App.
1973). If error is found in the trial court's ruling on an improper jury argument a three-prong test is used to determine if the error is reversible: (1) severity of the prosecutor's
misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2)
measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the
judge); and (3) the certainty of the conviction absent the misconduct (the strength of the
evidence supporting the conviction). Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim.
App. 1998). For prosecutorial argument that strikes over the shoulders of defense counsel
and for comments upon matters outside the record, the standard of harm for non-constitutional errors applies. Tex. R. App. P. 44.2(b); Martinez v. State, 17 S.W.3d 677,
692 (Tex. Crim. App. 2000). 

 Appellant's brief directs our attention to three instances during the State's closing
remarks to the jury, the first appearing in the record as follows: 

 [Prosecutor]: And that those are routine inspections and that
something went wrong on this particular day because as the inspection
started before the noon break, half of the students, half of the students had
left that school because they did not find it to be comfortable to be around
the inspector under those circumstances.


 [Trial Counsel]: Your Honor, I object to that. There's absolutely no
testimony from anybody who left the school that they - - 


 THE COURT: What is your objection, counselor?


 [Trial Counsel]: My objection is that he's arguing outside of the
record, Your Honor.


 THE COURT: Overruled. Jurors, remember my instructions to you.


 We find no error here as the State's comments were proper summation of the
evidence. Testimony indicated that on the day in question approximately fifty students
were present at Dolphin Technical Institute when appellant arrived to inspect. Further
testimony indicated that before appellant arrived, the atmosphere at the school among
students and instructors was basically normal, but after appellant's arrival that morning
there was a "building tension" in the school. From this tension, testimony revealed that
about "20 to 25" students left at lunch time and did not return. Therefore, the State's
remarks were supported by the evidence. 

 The second alleged instance of improper jury argument refers to the following: 

 [Prosecutor]: Ms. Modica tells you that she got there that day and
that she was suspicious. She had had some reports from somebody, and she
was there to see if she could catch them in violations. 

 She says she entered from the rear of the building and caught two
people smoking in a fashion that violated the regulations. When I challenged
her on that provision, she did not - - she did not deny that the commission
had given special permission to that school for letting the smokers smoke in
the back because the building permits for that building did not allow smokers
in the front.


 [Trial Counsel]: Your Honor, again, I object that he's arguing outside
of the record.


 THE COURT: Overruled.


 The record reflects the following exchange during appellant's cross-examination
testimony: 

 Q. [Prosecutor]: Did you know that your boss at that time, Mr. Knowles,
had already approved - - had previously approved smoking outside that
building in the back because of the City regulations concerning smoking in
the front? Did you know that?


 A. [Appellant]: He didn't.


 Q. He didn't?


 A. No.


 Q. You're saying that that's a false statement?


 A. Yes, sir. 


 Clearly, appellant did indeed challenge the State's assertion that the cosmetology
commission gave permission to the school's students to smoke at or near the back entrance
of the school. However, the record reflects somewhat unique circumstances as is shown
by the continuation of the State's argument immediately following the overruling of
appellant's above-noted objection: 

 [Prosecutor]: But be all of that as it may, whether it's a violation or
not, one of the things that did come out that whatever Mrs. Modica wrote in
that report, by February her supervisor had been sent from Austin down
here, reviewed everything, and gave them a 100 percent perfect score.


 [Trial Counsel]: Your Honor, again, I object to his arguing outside of
the record.


 THE COURT: Sustained.


 [Trial Counsel]: Ask the jury to be instructed to disregard that
argument, Your Honor.


 THE COURT: Sustained. Disregard what argument.


 [Trial Counsel]: You sustained my objection that he's arguing outside
the record. I'm merely asking for an instruction to [ask the] [sic] jury - - 


 THE COURT: That they disregard what?


 [Trial Counsel]: The statement that he made, Your Honor, that was
outside of the record.


 [Prosecutor]: Your Honor, I don't believe it's outside the record. 
That's something we could recess and get the court reporter - - 


 THE COURT: No. We're not going to call a recess.

 Members of the jury, you have - - one of your responsibilities is to
recall the facts. I trust that you will do that. Disregard any statement made
by either attorney that is outside of the record. 


 [Trial Counsel]: Your Honor, move for a mistrial.


 THE COURT: Denied.


 In this instance, the record does support the State's argument. The following
exchange took place during cross-examination of appellant: 

 Q. [Prosecutor]: Now, you inspected - - and I'm going to cut to the chase. 
You inspected that day; and you cited numerous violations, did you not?


 A. [Appellant]: Yes, I did.


 Q. Okay. Isn't it true that that report - - your report was set aside and
superseded by a report of Mr. Knowles not even two months later and that
that school got a 100 percent perfect score? That's true, isn't it?


 A. Would you repeat that statement?


 Q. Yes. Isn't it true that within, say, the month of February about two
months or less from the time you inspected and cited that school on all those
violations that the - - Mr. Knowles inspected that school and it got a perfect
score, did it not?


 A. Yes.


 It is necessary at this point to place the closing argument of the parties in its proper
perspective. The charge of the court was read to the jury prior to the commencement of
jury argument. The jury was also provided with the written instructions, which contained
the following general instructions in pertinent part: 

 Questions and comments of the attorneys do not constitute testimony
and must not be considered as evidence. You must also disregard any
statement of the attorneys that is inconsistent with the law contained in this
charge.




 . . . .


 You must not consider facts that have not been introduced into
evidence or legal principles not contained in this charge. It is improper for
any juror to discuss or consider anything which he or she knows or has
learned outside of the testimony presented to you and the law contained in
this charge. . . . 


 . . . .


 You are the exclusive judges of the facts proven, the believability of
the witnesses and the weight to be given their testimony. However, you
must be bound by and strictly follow the law contained in this charge. . . .


 . . . .


 After the attorneys present their arguments, you will retire, select a
foreperson, and consider your verdict. The arguments are not evidence and
you should give the arguments only the consideration you feel they deserve
during the evaluation of the evidence. . . . 


 Moments later, during the closing argument of appellant's trial counsel, the trial
court sustained the State's objection that trial counsel was arguing outside the record and
gave the following verbal instruction to the jury: 

 THE COURT: Members of the jury, I may sustain or overrule an
objection as to what was said but it is not my interpretation or understanding
of what is said that is crucial. It is your understanding that - - what the
witnesses said that is crucial. So, [Trial Counsel] will be given some latitude
to give his rationale and relate to you how he recalls the facts. [The
Prosecutor] will likewise be given an opportunity to tell you how they [sic]
recall the facts. I may rule one way or the other. But disregard those
statements, even the Court's ruling. You'll recall the facts as you
understand them to be because what [Trial Counsel] says is not evidence. 
What [The Prosecutor] says is not evidence, and what the judge says is not
evidence. You decide what the evidence is. 

 That having been said, move forward, [Trial Counsel]. 


Trial counsel immediately followed the trial court's instructions with his own
"admonishment":

 [Trial Counsel]: Thank you, Your Honor. 

 Questions and comments of the attorneys do not constitute testimony
and must not be considered as evidence. I'm not giving you evidence. I'm
giving you what I think my opinion is drawn from the evidence. . . .


 Thereafter, the prosecutor prefaced his final remarks to the jury with the following: 

 [Prosecutor]: Thank you. The first thing - - I don't want to be
repetitive but I do want to remind you you're the exclusive judges of the
facts. So, regardless of what I say I think came from that stand and what I
say I recall or [Trial Counsel], that's not the way it is. You heard the
testimony. You heard the evidence. I ask you to be very careful in that
regard. . . . 


 It was only after being verbally instructed by the trial court, with echoing remarks
by counsel for the parties, that the improper remark by the State was made. Although the
trial court overruled appellant's timely objection to the improper remark, the jury had
already been instructed in great detail that nothing the attorneys said was evidence, to
disregard the trial court's ruling on objections, and that only the members of the jury were
to recall and decide what the evidence was. While appellant did deny that the cosmetology
commission had given the school permission to allow students to smoke in the rear of the
building, the State's improper comment to the contrary during final argument did not affect
appellant's substantial rights so as to require reversal of her conviction. Tex. R. App. P.
44.2(b). Under the test for reversible error in jury argument as set out in Mosley, we find
the cautionary instruction given by the trial court and affirmed by counsel for the parties
combined to cure the error by the trial court in overruling appellant's objection. See
Mosley, 983 S.W.2d at 259. Additionally, the prosecutor's "misconduct" was not severe
and the strength of the evidence in support of the conviction was not given added weight
in any significant degree. Id. We also find, under Mosley, that any error by the trial court
during closing argument did not affect appellant's substantial rights. Issues four and five
are overruled. 

 Issue six avers: "The trial court erred by failing to provide sufficient curative
instructions to the jury following the sustaining of defense objections to the prosecutor's
improper comments." As noted above, two of the three instances of the State's closing
argument in question found support in the evidence. Nevertheless, appellant argues that
because any curative instructions given by the trial court were insufficient to cure the
State's misconduct, the "cumulative effect" of the improper argument raised in appellate
issues four and five require us to "review other misstatements of law and twisting of facts
performed by [the prosecutor]." As only one of the three instances of alleged improper
argument had merit, we find it unnecessary to conduct the sweeping review of the record
for other "misstatements" by the State. 

 An isolated mischaracterization of the record by the State which was not severe and
was made in the context of a plethora of prophylactic admonishments from the trial court
and the parties does not require appellate analysis of the record for the effects of
cumulative error. We recognize the proposition that a number of errors may be found
harmful in their cumulative effect. See Feldman v. State, 71 S.W.3d 738, 757 (Tex. Crim.
App. 2002) (op. on rehearing); Stahl v. State, 749 S.W.2d 826, 832 (Tex. Crim. App.
1988). However, there appears to be no precedent for holding that non-errors may, in
their cumulative "effect," cause error, much less reversible error. See Chamberlain v.
State, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). We overrule issue six. 

 Issue seven registers this complaint: "Trial counsel's failures to request indicated
jury instructions, to properly file a motion for new trial, to obtain rulings on filed
discovery motions, to raise [the prosecutor's] disqualification, and failure to use certain
highly exonerating exhibits supplied by appellant, cumulatively and singularly constituted
a denial of the effective assistance of counsel, in violation of appellant's rights to effective
counsel under the Sixth and Fourteenth Amendments to the United States Constitution." 

 In general, to obtain a reversal of a conviction on the ground of ineffective
assistance, an appellant must demonstrate that (1) trial counsel's performance fell below
an objective standard of reasonableness, and (2) there is a reasonable probability that, but
for counsel's unprofessional error(s), the result of the proceeding would have been
different. Strickland v. Washington, 466 U.S. 668, 687-88, 694, 104 S.Ct. 2052, 80
L.Ed.2d 674, 693, 698 (1984). In assessing a claim of ineffective assistance, an appellate
court "must indulge a strong presumption that counsel's conduct [fell] within the wide
range of reasonable professional assistance; that is, the [appellant] must overcome the
presumption that, under the circumstances, the challenged action might be considered
sound trial strategy." 466 U.S. at 689 (some punctuation omitted; citation omitted). 

 Texas courts have consistently adhered to the standard set out in Strickland. See
generally McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). "Any
allegation of ineffectiveness must be firmly founded in the record and the record must
affirmatively demonstrate the alleged ineffectiveness." Id. at 500. It is also recognized
that counsel is presumed to have rendered adequate assistance and made all significant
decisions in the exercise of reasonable professional judgment. See id.; see also Strickland,
466 U.S. at 689.

 The deficiencies of trial counsel alleged by appellant include (1) failing to request
an instruction on self-defense, (2) failing to secure a jury instruction to the effect that the
victim and her brother were not permitted to interfere or impede appellant's inspection of
the school per cosmetology commission rules and regulations and provisions of the Texas
Administrative Code, (3) failing to request disqualification of the prosecutor as he had been
previously consulted by appellant regarding legal representation for the instant offense, (4)
failing to properly "present" appellant's motion for new trial to the trial court for a ruling,
(5) failing to obtain rulings on the pretrial motions he filed thereby failing to obtain
"complete" discovery, and (6) failing to utilize certain "materials" acquired through prior
State investigations of the victim's cosmetology school "which would have aided in
[appellant's] defense." 

 With regard to most of these alleged deficiencies, appellant essentially asks us to
assume no trial strategy existed or only an unreasonable one at best. Yet, what appellant
asserts "ought to have been done" by trial counsel has virtually no legal foundation or
factual support. For example, we are unaware of any statutory provision or common law
precedent which would have permitted the trial court to have provided the jury with the
provisions of Texas Cosmetology Commission's Regulation § 1602.551 so as to "have
informed jurors that Appellant had both a right and a duty to protect such evidence [time
cards] of violations." (4) Indeed, such an instruction could arguably have been subjected to
an objection by the State as a comment by the trial court on the weight of the evidence. 
See Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon Supp. 2004) (Judge shall deliver
to the jury a written charge "distinctly setting forth the law applicable to the case; not
expressing any opinion as to the weight of the evidence, not summing up the testimony,
discussing the facts or using any argument in his charge calculated to arouse the sympathy
or excite the passions of the jury.") 

 In a similar vein, appellant's insistence that trial counsel's performance was grossly
deficient for failing to request an instruction on self-defense is entirely misplaced in light
of the testimony of appellant. On direct examination, appellant testified as to how she
sustained injuries to her hand and wrist. She continued her testimony concerning the
events in question as follows: 

 Q. [Trial Counsel]: Did you knock [the victim] to the ground?


 A. [Appellant]: No.


 Q. Did you grab her by the shoulders and push her in a fashion that she
would have hit her head on a wall?


 A. No.


 Q. Did you cause any injury to [the victim]?


 A. No. 


 Q. Are you still feeling any of the effects of your injuries?


 A. Yes.


 . . . .


 Q. Okay. Did you in any way provoke [victim's brother] into doing what
he did?


 A. No.


 Q. Did you in any form or fashion have any intention of touching [the
victim] - - 


 A. No. I'm sorry.


 Q. Well, let me just finish.

 - - in a manner that she would have considered provocative or offensive?


 A. No.


 The record reflects that appellant denied even touching the victim or the victim's
brother, but said she was herself assaulted by the victim and the victim's brother. 
Appellant contends that because trial counsel "argued" for the "fallback position of self-defense," his performance was deficient for failing to request such an instruction from the
trial court. 

 We agree with the general proposition that when evidence from any source raises
a defensive issue, and the defendant properly requests a jury instruction on that issue, the
trial court must submit the issue. See Muniz v. State, 851 S.W.2d 238, 254 (Tex. Crim.
App. 1993). However, we have previously held that when the defensive issue in question
is one contained in Chapter Nine of the Texas Penal Code, and the defendant fails to admit
to having committed the charged act, the defendant is not entitled to an instruction on self-defense. See Gilmore v. State, 44 S.W.3d 92, 96-97 (Tex. App.--Beaumont 2001, pet.
ref'd). As we explained, Chapter Nine is titled, "Justification Excluding Criminal
Responsibility," and includes "justifications" such as "necessity" and "public duty," as
well as self-defense. Id. at 97. As the title of the chapter indicates, these defenses have
traditionally been recognized as justification for conduct that would otherwise be criminal. 
Id. As such an instruction informs the jury that the charged conduct was excusable under
the law, the accused must admit to having committed the charged conduct in the first place. 
However, when a person accused of assault denies even touching the victim, as appellant
so testified, she has engaged in no conduct which needs justifying. She has essentially
denied that the alleged criminal act ever took place. Therefore, trial counsel's
performance was not deficient for not having requested an instruction on self-defense as
such a defense was not raised by the evidence. And, as noted above, argument of counsel
is not evidence. 

 In Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002), the Court of
Criminal Appeals observed that, under normal circumstances, "the record on direct appeal
will not be sufficient to show that counsel's representation was so deficient and so lacking
in tactical or strategic decisionmaking [sic] as to overcome the presumption that counsel's
conduct was reasonable and professional." (footnote omitted). This proposition was
reiterated by the Court in Rylander v. State, 101 S.W.3d 107, 110-11 (Tex. Crim. App.
2003). In her brief, appellant states: "Rylander is inapplicable because trial counsel's
actions speak louder than his words in his own defense could, anyway, in the designated
instances of ineffectiveness." Appellant appears to miss the entire point of Bone and
Rylander in that her trial counsel's alleged deficiencies of performance are neither
professionally deficient nor prejudicial per se. Under such circumstances, both Bone and
Rylander agree that "trial counsel should ordinarily be afforded an opportunity to explain
his actions before being denounced as ineffective." Rylander, 101 S.W.3d at 111; Bone,
77 S.W.3d at 836. 

 The somewhat unique procedural history of the instant case makes affording to trial
counsel the opportunity to respond to appellant's particular complaints compelling in that
appellant had already been adjudicated guilty by a jury in municipal court on the identical
charge, albeit with different trial counsel. We have no way of knowing if present trial
counsel discussed the strategy and presentation with municipal court trial counsel so as to
refine or entirely change trial strategy for the de novo trial in county court. Obviously,
all this is pure speculation as present trial counsel has not been afforded the opportunity
to provide reasons for the alleged deficient acts and omissions. As has been often noted,
no Texas court defines the right to effective assistance of counsel as the right to error-free
counsel. See Ex parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990); Mercado
v. State, 615 S.W.2d 225, 228 (Tex. Crim. App. 1981); Ex parte Burns, 601 S.W.2d 370,
372 (Tex. Crim. App. 1980). From the state of the record before us, appellant has failed
in her burden to show trial counsel's performance fell below an objective standard of
reasonableness. See Rylander, 101 S.W.3d at 110. Issue seven is overruled. (5) 

 Appellant's concluding issue argues "[t]he evidence was factually insufficient to
support the jury's verdict that appellant was guilty of simple assault beyond a reasonable
doubt, and judgment should be reversed." In a factual sufficiency review, we review all
of the evidence in a neutral light, and we will set the verdict aside only if the evidence is
so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence
is so strong that the standard of proof beyond a reasonable doubt could not have been met. 
Ross v. State, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004). (6) Even in a neutral light,
evidence in support of the verdict came in the form of testimony from the victim,
[M.E.P.], and the victim's brother, [D.L.L.]. Additionally, one student eye-witness
testified that she observed appellant "push [M.E.P.] over the table. She reached over the
table and pushed her . . . . So, [M.E.P.] was standing on this side; and when she
[appellant] pushed her [M.E.P.], she pushed her into the wall. Her head hit the wall." 
Another student eye-witness testified that "[appellant] proceeded to turn around and shove
[M.E.P.] into the wall, and [M.E.P.] hit the ground." When asked if he observed
appellant being provoked into pushing [M.E.P.], this student stated he did not. 

 In addition to the denial by appellant that any offensive contact by her took place,
the defense also elicited the following description of events from another student eye-witness present at the school when the incident occurred: 

 Q. [Trial Counsel]: Could you see [M.E.P.]?


 A. [Student]: I saw her. She had come and was across the table. When I
stopped what I was doing and I walked towards there and people were going
towards there because there was obviously something going on. Just heard
a lot of loud noises and some movement and I'm short. But, I mean, there
were people moving over there and I looked in and I saw him, [D.L.L.],
come around the table and he was still hollering at this point and just - - it
was more like just hearing loud noises. It's like one of those things
something flashes in your head and something's really wrong and [M.E.P.]
had come in and she was like where he had been across the table from Mrs.
Modica. And I saw - - I saw him like, I don't know, lunge maybe. His
shoulder like went into her, and he was obviously reaching for her.


 Q. You saw that?


 A. That's all I could see on - - on his part that he was - - I don't want to say
throwing himself into her but he lunged at her, I guess, with his shoulder. 


 . . . .


 Q. Where was [M.E.P.] when this actually took place?


 A. She was across the table like - - you know, sitting - - standing kind of
across the table from like where she would be sitting now, where Mrs.
Modica is and [M.E.P.] was kind of across the table and she was reaching
across the table. 


 Q. Okay. Did you see - - well, as a result of [D.L.L.]'s actions, what
happened?


 A. I saw him lunge into her and she kind of knocked sideways and I saw
[M.E.P.] grabbing at her and then there was a whole lot of people around.


 Q. In the room or just out - - 


 A. And she was - - coming towards - - I mean, in that room there were
already people and then it was - - I mean, people were coming, you know,
to see what was happening because you could hear a scuffle and you could
hear the loudness. 


 Q. Okay. Now - - 


 A. And I went back to my station after that. I was packing up.


 Q. Okay. Were you the only one who started to pack up?


 A. I don't think so because it made everybody really nervous. 


 Q. Okay. Did you see Mrs. Modica do anything to [D.L.L.] - - 


 A. No.


 Q. - - physically?


 A. No, sir.


 Q. Okay. Did you see Mrs. Modica do anything to [M.E.P.]?


 A. Not - - not what I could see. She - - she couldn't have got to her. I
mean, I guess she could have reached across the table maybe but I didn't see
any of that. After I saw the main - - what I thought was the main scuffle of
it, I thought "I'm getting my stuff and I'm leaving," but I didn't see - - she
was - - I don't know. She was - - it's like she was reaching or digging for
something. You could see that, but that's all I could tell she was doing. 


 Q. Okay. Did you see [M.E.P.] physically being pushed back into a wall?


 A. Oh, no, sir.


This student also stated that shortly after the "scuffle," she observed [M.E.P.] "running
towards the front door," and [M.E.P.] was not being assisted, carried, or aided by anyone.
 There is no question but that the record contains testimony in support of both
appellant's and the State's theory of prosecution. Viewing all the evidence in a neutral
light, as we must, we simply cannot say that the State's evidence is so weak that the jury's
verdict is clearly wrong and manifestly unjust. Ross, 133 S.W.3d at 620. Nor can we say
that evidence favorable to appellant is so strong that the State's evidence could not have
met the standard for criminal conviction - - proven beyond a reasonable doubt. Id. The
evidence is factually sufficient to support the jury's verdict. Issue eight is overruled. In
connection with our resolution of issue one, we reform the judgment of the trial court,
substituting the properly-worded offense "Assault," for the improperly worded term "City
Appeal - Other," wherever necessary. See Tex. R. App. P. 43.2(b); Cobb v. State, 95
S.W.3d 664, 668 (Tex. App.--Houston [1st Dist.] 2002, no pet.)("'An appellate court has
the power to correct and reform a trial court judgment to make the record speak the truth
when it has the necessary data and information to do so[.]'")(quoting Nolan v. State, 39
S.W.3d 697, 698 (Tex. App.--Houston [1st Dist.] 2001, no pet.)). As so reformed, the
judgment of the trial court is affirmed.

 AFFIRMED AS REFORMED.



 ________________________________

 STEVE MCKEITHEN

 Chief Justice 


Submitted on September 28, 2004

Opinion Delivered December 1, 2004

Publish


Before McKeithen, C.J., Burgess and Gaultney, JJ.
1. The provision at issue in Marin states: "An appointed counsel is entitled to 10 days
to prepare for a proceeding but may waive the preparation time with the consent of the
defendant in writing or on the record in open court." See Tex. Code Crim. Proc. Ann.
art. 1.051(e) (Vernon Supp. 2004) (emphasis added); see Marin, 851 S.W.2d at 281-82. 

2. Article 102.075 was repealed effective January 1, 2004. See Act of June 2, 2003,
78th Leg. R.S., ch. 209, § 85(a)(7), (b) 2003 Tex. Gen. Laws 979, 1003. For relevant
provisions which took effect on January 1, 2004, see Chapter 133 of the Texas Local
Government Code, and particularly Tex. Loc. Gov't Code Ann. §§ 133.101-133.104
(Vernon Supp. 2004).
3. Faretta states that, because Sixth Amendment rights are basic to our adversary
system of criminal justice, they are part of the "due process of law" that is guaranteed by
the Fourteenth Amendment to defendants in the criminal courts of the States. Id., 422
U.S. at 818. Therefore, a defendant's "right of self-representation" finds support in the
"structure of the Sixth Amendment." Id. at 819. Because the Sixth Amendment does not
contain explicit language providing for a defendant's "right" to proceed without counsel
when he voluntarily and intelligently elects to do so, the Court was required to "find" such
a right within the meaning of the Sixth Amendment as applied to the States through the
Fourteenth Amendment. Id. at 818-20. The instant appellant argues that a prosecutor
whose closing arguments contain evidentiary assertions that are outside the record violates
her "right to a fair trial" under the same Sixth Amendment. Yet, unlike the Court in
Faretta, appellant does not attempt to inform us specifically where such an argument, even
if erroneous, falls within the right afforded by the Sixth Amendment so as to be
"necessarily implied by the structure of the Amendment." Faretta, 422 U.S. at 819. 
4. Similar language to that quoted in appellant's brief appears in Tex. Occ. Code
Ann. § 1602.551 (Vernon 2004), and reads as follows:

 (a) The commission, an inspector, or an authorized representative of the
commission may enter a license holder's premises at any time during normal
business hours to determine whether the license holder is in compliance with
this chapter and commission rules. 

 (b) If an inspector discovers a violation of this chapter or a commission
rule, the inspector shall:

 (1) give to the violator written notice of the violation on a form
prescribed by the commission; and 

 (2) file a complaint with the executive director.
5. For a compelling example of the importance of providing an evidentiary basis for
an ineffective assistance claim, see Ex parte Varelas, 45 S.W.3d 627 (Tex. Crim. App.
2001). Varelas's conviction for capital murder and death sentence were affirmed on direct
review by the Court of Criminal Appeals in the face of, inter alia, an ineffective assistance
challenge because of "an otherwise silent record." Id. at 629, 632. However, Varelas's
post-conviction habeas corpus application was accompanied by an affidavit from his trial
counsel admitting the omissions at trial were not the result of trial strategy. Id. at 632. 
The Court found trial counsel's affidavit admitted to deficient performance and later found
prejudice as a result of the deficient performance. Id. at 632, 636. The Court granted
Varelas relief and ordered a new trial for him. Id. at 636. 
6. See also Escamilla v. State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004);
Zuniga v. State, 144 S.W.3d 477, 481-82 (Tex. Crim. App. 2004); Vodochodsky v. State,
No. 74129, 2004 WL 840121, at *6 (Tex. Crim. App. April 21, 2004)(not yet released
for publication).