Opinion issued March 1, 2016



In The

# Court of Appeals

For The

# First District of Texas

————————————

NO. 01-14-00618-CR

NO. 01-14-00619-CR

————————————

**DENNIS STEELE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

———

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Case Nos. 13CR3049 & 13CR3050**

———

**O P I N I O N**

A jury convicted appellant, Dennis Steele, of two counts of the third-degree

felony offense of assault on a public servant for his assault on two officers at the

Texas City Jail. After finding the allegations in two enhancement paragraphs true,

the jury assessed punishment at fifty years' confinement for each offense, to run concurrently.[1] In three issues, appellant contends that (1) the trial court abused its discretion by denying his request for a jury instruction on the lesser-included offense of resisting arrest; (2) the trial court abused its discretion by denying his request for a jury instruction on self-defense; and (3) the State failed to present sufficient evidence that he assaulted Officer E. Cisneros.

We affirm.

## Background

Shortly after 5:00 p.m. on November 6, 2013, appellant drove his car through a construction barricade and onto freshly-poured concrete at a construction site in Texas City before crashing into a dirt berm. After he crashed, appellant continued to try to drive forward until the engine of his car caught on fire. Oscar Gonzales, the project superintendent of the construction site, and one of his inspectors helped appellant from the car. Gonzales testified that appellant could not stand on his own, that he kept trying to return to his car even though the engine was on fire, and that he smelled of alcohol. Firefighters and police officers arrived at the scene right after Gonzales helped appellant from his car.

---

[1] *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(1) (Vernon Supp. 2015). The assault against Officer E. Cisneros was tried in cause number 13CR3049 and resulted in appellate cause number 01-14-00618-CR. The assault against Officer P. Owens was tried in cause number 13CR3050 and resulted in appellate cause number 01-14-00619-CR.

2

Texas City Police Department Officer B. Berg arrived at the scene of the accident, arrested appellant based on suspicion of driving while intoxicated ("DWI"), and transported appellant to the Texas City Jail. After arriving at the jail, Officer Berg escorted appellant to the DWI interview room to complete his DWI investigation, which included conducting sobriety tests and obtaining breath specimens from appellant. Appellant provided two breath specimens which demonstrated a blood alcohol concentration of .223 and .208, or nearly three times the legal limit of .08. Appellant was calm and not combative during the interview process.

After Officer Berg completed the DWI interview, appellant was placed in one of two small holding cells located near the booking area of the Texas City Jail. This holding cell had no fixtures, such as a bed or a toilet, and was intended to hold suspects temporarily while they were going through the initial booking process or were awaiting transfer to the Galveston County Jail.[2] This holding cell was monitored by video surveillance, and the trial court admitted into evidence a copy of the video recording of appellant in this holding cell.

Officer S. Jackson, a jailer at the Texas City Jail on the day appellant was arrested, described appellant's demeanor at the time Officer Berg placed him in the

---

[2]    This holding cell was not the same as the detoxification cell, or "drunk tank," which was a larger cell used specifically to house intoxicated suspects on a temporary basis.

3

holding cell as "quiet and still intoxicated." Approximately thirty minutes after appellant was placed in a holding cell, Officer Jackson needed to use the cell to hold inmates who were being transferred to the Galveston County Jail. She waited for another officer to arrive to assist with the inmate transfer before attempting to move appellant from the holding cell to a detoxification cell. When asked which officer arrived to help move appellant, Officer Jackson responded, "Officer Eric Cisneros."

The video recording of the holding cell reflected that, at this time, appellant was lying curled up in the fetal position on the floor of the cell, apparently asleep, with his shirt over his head and his hands inside his shirt. When Officer Cisneros arrived, Officer Jackson opened the holding cell, tapped appellant on the foot, and asked him to stand so he could be moved to a detoxification cell. Appellant did not verbally respond to Officer Jackson, so she asked Officer Cisneros for assistance. When Officer Cisneros asked him to stand up, appellant responded with profanity and an obscene gesture. Officer Jackson testified that Officer Cisneros stayed calm, did not raise his voice, and did not curse at appellant. When appellant still failed to respond to Officer Cisneros's requests, Cisneros asked Officer Jackson if she could find the other jailer working that night, Detention Officer P. Owens.

Appellant still did not physically respond to either Officer Cisneros's or Officer Owens's requests, so both officers took hold of appellant's arms to try to

4

lift him into a standing position. Neither officer "move[d] fast [or] jerk[ed]" appellant up from the floor. Officer Jackson testified that, at that point, appellant quickly stuck a hand out of his shirt and grabbed hold of Officer Cisneros's arm. After appellant began physically struggling with Officers Cisneros and Owens, Officer Jackson left the holding cell and called dispatch to ask for assistance. She arrived back at the holding cell with Corporal Moreno, who "dry stunned" appellant with a Taser in an attempt to subdue him. The officers' struggle with appellant lasted several minutes, and Officer Jackson testified that she observed that both Officer Cisneros and Officer Owens had cuts on their arms. Appellant was later moved to another holding cell without further incident.

Officer Owens testified that he first had contact with appellant when Officers Cisneros and Jackson informed him that appellant would not move from the holding cell. Officer Owens spoke to appellant with a calm voice and asked him to get up so he could move to another cell where he could sleep. Appellant responded to him with profanity and stated, "I'm not moving anywhere." As Officer Owens and Officer Cisneros lifted appellant to his feet, appellant grabbed at Cisneros "in an aggressive manner" and started biting and scratching Cisneros. Appellant also scratched Officer Owens with his fingernails. Officer Owens identified photographs of injuries to his arm and hand that he sustained in the altercation with appellant. Officer Owens observed that Officer Cisneros also had

5

injuries from the incident, and he described Cisernos's injuries as significantly worse than his own.

Officer Owens acknowledged that the officers and appellant ended up on the floor during the struggle, and he had his entire body weight on appellant pinning him to the floor because appellant was still fighting them. At one point during the incident, Officer Cisernos was able to put one handcuff on appellant's wrist, but they were not able to gain control over appellant until Corporal Moreno arrived.

On the second day of trial, the State called "Officer Eric Cisneros" as a witness. Officer Cisneros identified himself as "Officer Cisneros with the Texas City Police department." Officer Cisneros identified appellant in court as the inmate he was called to help move from one booking cell to another within the Texas City Jail on November 6, 2013. He testified that when he first encountered appellant, appellant was lying on the ground in the fetal position with his hands under his shirt. Officer Cisneros asked appellant to get up and explained that they needed to move him to another cell. Appellant ignored him at first but then made an obscene gesture and used profanity. After Officer Owens arrived to assist, Officer Cisneros tried to get hold of appellant's arms underneath his shirt to lift him to his feet. Appellant then began physically struggling and fighting with the officers, despite their requests that he calm down so they could move him to another cell. During the struggle, appellant kept reaching for Officer Cisneros's

6

neck and chest, and he succeeded in scratching Cisneros on his right forearm. Throughout the struggle, Officer Cisneros was on top of appellant "off and on" in an attempt to handcuff him.

Officer Cisneros testified that he bled as a result of the scratches on his arm, and he identified several photographs admitted into evidence as photographs of the injuries to his arm. He stated that he had scars from the scratches and bite marks that he had received, and he showed these scars to the jury. Officer Cisneros testified that appellant hit, kicked, scratched, and bit him during the struggle.

On cross-examination, Officer Cisneros acknowledged that he and Officer Owens forced appellant to the ground. He testified that they did so because appellant was already physically resisting and struggling against them in response to their attempts to lift him to his feet. Officer Cisernos used his weight to pin appellant to the ground in an attempt to handcuff him.

The trial court admitted the surveillance video recording of the holding cell, which captured all activity in the cell from the time Officer Berg first placed appellant there after his DWI interview until the time he was finally escorted to a detoxification cell. This recording did not have any audio. Approximately thirty-five minutes into the recording, Officer Jackson appeared and tapped on appellant's foot. Appellant shifted slightly but did not get up. Officer Cisneros then appeared and addressed appellant. When appellant did not physically

7

respond, Officer Cisneros and Officer Owens took hold of appellant's arms and tried to pull him into a sitting position and then onto his feet. As the officers did this, appellant began to physically struggle, moving erratically to try to stay on the ground and then to get out of the officers' grasp. Officers Cisneros and Owens then took appellant to the floor, and they occasionally pinned him to the floor in an attempt to handcuff him. Appellant tried to kick the officers throughout the encounter. Approximately two-and-a-half minutes after the struggle began, Corporal Moreno arrived and used his Taser, which ultimately subdued appellant.

At the charge conference, appellant requested a jury instruction on the lesser-included offense of resisting arrest and an instruction on self-defense. The trial court denied both of these instructions. The jury found appellant guilty of two counts of assault on a public servant and, after finding the allegations in two enhancement paragraphs true, assessed punishment at fifty years' confinement. This appeal followed.

**Sufficiency of the Evidence**

In his third issue, appellant contends that the State failed to present sufficient evidence that he assaulted Officer E. Cisneros, as alleged in the indictment in cause number 13CR3049, because the Officer Cisneros who testified at trial never identified himself as "Officer E. Cisneros" or "Officer Eric Cisneros."

8

## A. *Standard of Review*

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011) (holding that *Jackson* standard is only standard to use when determining sufficiency of evidence). The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *see also Henderson v. State*, 29 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (stating jury can choose to disbelieve witness even when witness's testimony is uncontradicted).

We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We afford almost complete deference to the jury's credibility determinations. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We resolve any inconsistencies in the evidence in favor of the

9

verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also*

*Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record

supports conflicting inferences, we presume that the factfinder resolved the

conflicts in favor of the prosecution and therefore defer to that determination.").

Circumstantial evidence is as probative as direct evidence in establishing guilt, and

circumstantial evidence alone can be sufficient to establish guilt. *Sorrells v. State*,

343 S.W.3d 152, 155 (Tex. Crim. App. 2011) (quoting *Clayton*, 235 S.W.3d at

778).

## B. Identity of Complainant

In cause number 13CR3049, the State indicted appellant for the offense of

assault on a public servant, "E. Cisneros." A person commits this offense if the

person intentionally, knowingly, or recklessly causes bodily injury to a person the

actor knows is a public servant while the public servant is lawfully discharging an

official duty. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(1) (Vernon Supp.

2015). The complainant's name is not a substantive element of this offense. *Cf.*

*Fuller v. State*, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002) (holding that Penal

Code section 22.04(a)(3) defines offense as "injury to an elderly individual" not

"injury to an elderly individual named Olen M. Fuller"). Thus, the State's failure

to prove the complainant's name exactly as alleged in the indictment does not

render the evidence insufficient to support the conviction under *Jackson*. *See id.*

10

Instead, with regard to the identity of the complainant, "the State must prove that the victim alleged in the indictment is the same person as the victim proved at trial." *Johnson v. State*, 364 S.W.3d 292, 295 (Tex. Crim. App. 2012); *see also Byrd v. State*, 336 S.W.3d 242, 252 (Tex. Crim. App. 2011) ("Although the *name* of the owner is not a substantive element of theft, the State is required to prove, beyond a reasonable doubt, that the person (or entity) alleged in the indictment as the owner is the same *person* (or entity)—regardless of the name—as shown by the evidence.") (emphasis in original).

As a matter of state law sufficiency of evidence review, we measure evidentiary sufficiency against the elements of the offense as defined by the hypothetically correct jury charge for the case. *See Fuller*, 73 S.W.3d at 252; *Gollihar v. State*, 46 S.W.3d 243, 255–56 (Tex. Crim. App. 2001). In each case that involves a sufficiency of evidence claim based upon a variance between the indictment and the proof at trial, we must make a materiality inquiry, and only "material" variances render the evidence insufficient. *Fuller*, 73 S.W.3d at 253 (citing *Gollihar*, 46 S.W.3d at 257). The materiality inquiry "requires a determination of whether the variance deprived the defendant of notice of the charges or whether the variance subjects the defendant to the risk of later being prosecuted for the same offense." *Id.* (citing *Gollihar*, 46 S.W.3d at 257). We may disregard "[a]llegations giving rise to immaterial variances" when considering

11

the hypothetically correct jury charge, but "allegations giving rise to material variances must be included." *Id.* (quoting *Gollihar*, 46 S.W.3d at 257).

The Dallas Court of Appeals addressed an analogous situation in *Davey v. State*, which was also an assault-on-a-public-servant case. 989 S.W.2d 52 (Tex. App.—Dallas 1998, pet. ref'd). In that case, the indictment alleged that appellant assaulted "M. Osborne," a detention officer for the Dallas County Sheriff's Department. *Id.* at 54. At trial, an Officer Osborne testified and identified herself as "Detention Service Officer Osborne." *Id.* She testified that she and a male officer were escorting the defendant to his cell when the defendant began struggling and kicked her in the chest. *Id.* The male officer involved in the struggle testified that "he and 'Officer Osborne'" were escorting the defendant to his cell when the assault occurred, and another officer testified that he "received an officer assistance call from 'Officer Osborne,' and assisted 'Ms. Osborne' in restraining [the defendant]." *Id.* The defendant testified on his own behalf and "identified the female detention service officer who escorted him from the gym as 'Ms. Osborne.'" *Id.* He also acknowledged the date on which the incident with "[the male officer] and Osborne" took place. *Id.*

The Dallas Court of Appeals concluded that any rational factfinder could have found beyond a reasonable doubt that "the detention service officer Osborne who testified at trial was the complainant, 'M. Osborne,' the detention officer

alleged in the indictment." *Id.* The court also concluded that even if a variance occurred, the variance did not require reversal. *Id.* In his testimony, the defendant "recognized 'Ms. Osborne' as the female detention service officer present during" the incident, and his testimony and Officer Osborne's testimony "demonstrate[d] he had notice of the charges against which he was to defend." *Id.* at 55. The court held that "the variance, if any, between the allegation of 'M. Osborne' and the proof of 'Ms. Osborne,' 'Detention Services Officer Osborne,' and 'Officer Osborne' did not affect a substantial right of [the defendant.]" *Id.*

Here, the indictment in cause number 13CR3049 alleged that appellant "intentionally, knowingly, or recklessly cause[d] bodily injury to E. Cisneros . . . a peace officer . . . ." Officer Jackson testified that "Officer Eric Cisneros" arrived to help her transfer appellant from the holding cell to another cell within the Texas City Jail. When appellant remained uncooperative and refused to move from the holding cell, Officer Cisneros asked Officer Jackson to find Officer Owens, so he could also assist. Officer Jackson saw appellant "grab[] ahold of Officer Cisneros's arm." After the incident, Officer Jackson observed that "Officer Cisneros's right arm had cuts on his arm." Officer Jackson viewed the surveillance video of the holding cell while on the witness stand and identified "Officer Cisneros" as one of the officers who arrived to assist with the transfer of appellant.

Officer Owens testified that he became involved with appellant when "Officer Cisneros and Detention Officer Jackson advised [him] that [appellant] would not move" from the holding cell. He testified that he and Officer Cisneros "got [appellant] up to his feet and [appellant] pulled his arms through his shirt and began to grab Officer Cisneros." Officer Owens stated that appellant grabbed Officer Cisneros in "an aggressive manner" and that appellant "was biting and scratching Officer Cisneros." He testified that he observed that Officer Cisneros had scratch marks as a result of the incident and that these injuries were significantly worse than his own injuries.

On the second day of trial, the prosecutor stated, "At this time the State calls Officer Eric Cisneros." Officer Cisneros introduced himself as "Officer Cisneros with the Texas City Police department" and testified that he is a certified peace officer. Officer Cisneros testified that he encountered appellant when he "was called to the police department to assist a jailer in helping her remove one inmate from the booking cell to another cell." He identified appellant in court as the inmate he had been called to transfer. Officer Cisneros identified both himself and appellant on the recording of the surveillance video of the holding cell. He testified concerning the struggle with appellant, and he stated that appellant scratched him on his right forearm during the incident. Officer Cisneros testified that State's Exhibits 7 through 12 consisted of photographs taken after the incident,

14

and he identified himself and his injuries in the photographs. He testified that he had scars on his arms as a result of the incident, and he showed those scars to the jury.

Viewing the evidence in the light most favorable to the verdict, as we are required to do when reviewing the sufficiency of the evidence, we conclude that any rational factfinder could have found beyond a reasonable doubt that the Officer Cisneros who testified at trial was the complainant "E. Cisneros" alleged in the indictment.[3] *See Davey*, 989 S.W.2d at 54; *see also Johnson*, 364 S.W.3d at 295 ("[T]he victim's name need not be proved with exactness, but the State must prove that the victim alleged in the indictment is the same person as the victim proved at trial."); *Byrd*, 336 S.W.3d at 252 (stating same). Furthermore, even if the State failed to prove the complainant's name exactly as alleged in the indictment, the evidence is not insufficient under *Gollihar*. *See Fuller*, 73 S.W.3d at 254. The complainant's name is not a statutory element of the offense of assault on a public servant. *See id.*; *see also* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(1). Any variance between the indictment and the proof at trial in this case is immaterial.

---

[3]  In his appellate brief, appellant acknowledges that Officer Jackson "testified that an Officer Eric Cisneros was present at the scene and assisted her when Appellant did not respond to her commands initially," but he argues that "her testimony alone is insufficient to meet the elements of the indictment." In making this argument, appellant ignores the testimony of Officer Owens and Officer Cisneros himself, both of whom testified that appellant caused injury to Officer Cisneros during the struggle.

15

*See Fuller*, 73 S.W.3d at 254; *Davey*, 989 S.W.2d at 54.  The record contains no indication that appellant "did not know whom he was accused of injuring or that he was surprised by the proof at trial," and the variance "does not subject appellant to another prosecution for the same offense."  *See Fuller*, 73 S.W.3d at 254; *Davey*, 989 S.W.2d at 55 (holding that variance, if any, between allegation of "M. Osborne" and proof of "Ms. Osborne," "Detention Services Officer Osborne," and "Officer Osborne" did not affect defendant's substantial rights).

We hold that the State presented sufficient evidence that appellant assaulted "E. Cisneros."

We overrule appellant's third issue.

### Jury Charge Errors

In his first issue, appellant contends that the trial court erred by denying his request to include an instruction on the lesser-included offense of resisting arrest in the jury charge.  In his second issue, appellant contends that the trial court erred by denying his request to include an instruction on self-defense in the jury charge.

### A. Standard of Review

We use a two-step process in reviewing jury charge error.  *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).  First, we determine whether error exists in the charge.  *Id.*  If error does exist, we review the record to determine whether the error caused sufficient harm to require reversal of the conviction.  *Id.*  When

the defendant properly objected to the error in the charge, reversal is required unless the error was harmless. *Id.*; *see also Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984); *Starks v. State*, 127 S.W.3d 127, 133 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd, untimely filed) (providing that, to preserve error in jury charge, defendant must object or request specific charge).

## B. Denial of Lesser-Included Offense Instruction

We review the trial court's decision regarding the failure to submit a lesser-included offense instruction for an abuse of discretion. *Brock v. State*, 295 S.W.3d 45, 49 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). Here, appellant was charged with assault on a public servant under Penal Code section 22.01(a). Appellant contends that he was entitled to a jury instruction on the lesser-included offense of resisting arrest, an offense punishable under Penal Code section 38.03.

The indictments in this case charged appellant with the offenses of assault on a public servant under Penal Code section 22.01(a)(1) and alleged that appellant

> did then and there intentionally, knowingly, or recklessly cause bodily injury to E. Cisneros [and P. Owens] by hitting the said E. Cisneros [and P. Owens] with his hand and or by kicking the said E. Cisneros [and P. Owens] with his foot and or leg and or by scratching and or cutting the said E. Cisneros [and P. Owens] with his fingernail, and or biting the said E. Cisneros [and P. Owens] with his teeth and the defendant did then and there know that the said E. Cisneros [and P. Owens were] then and there [public servants], to-wit: a peace officer [and or a detention officer and or an employee of the Texas City Police Department] and that the said E. Cisneros [and P. Owens were] then and there lawfully discharging an official duty, to-wit: attempting to restrain and or control the said Dennis Steel[e].

17

A person commits the offense of assault on a public servant if the person: (1) intentionally, knowingly, or recklessly (2) causes bodily injury (3) to a person the actor knows is a public servant (4) while the public servant is lawfully discharging an official duty. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(1). A person commits the offense of resisting arrest, search, or transportation if the person: (1) intentionally (2) prevents or obstructs a person he knows is a peace officer (3) from effecting an arrest, search, or transportation of the actor (4) by using force against the peace officer. *Id.* § 38.03(a) (Vernon 2011).

Code of Criminal Procedure article 37.09 provides that an offense constitutes a lesser-included offense of a charged offense if:

> (1)    it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;
>
> (2)    it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;
>
> (3)    it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or
>
> (4)    it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX. CODE CRIM. PROC. ANN. art. 37.09 (Vernon 2006). We use the statutory elements and the facts alleged in the charging instrument to find lesser-included offenses. *See Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007).

18

We employ a two-step analysis to determine whether the trial court should have given an instruction on a lesser-included offense. *See id.* The first step in the analysis is whether an offense is a lesser-included offense of the charged offense, and this is a question of law that does not depend on the evidence to be produced at trial. *Id.* This step must be capable of being performed before trial "by comparing the elements of the offense as they are alleged in the indictment or information with the elements of the potential lesser-included offense." *Id.* at 535–36; *see also Ex parte Watson*, 306 S.W.3d 259, 265 (Tex. Crim. App. 2009) (clarifying, in intoxication-assault case, that particular manner in which injury was caused was not "element" of offense and, thus, this descriptive language in indictment should not be considered at first step of lesser-included offense analysis).

The second step of the analysis asks whether there is evidence that supports giving the lesser-included offense instruction to the jury. *Hall*, 225 S.W.3d at 536. The Court of Criminal Appeals has held that

> [a] defendant is entitled to an instruction on a lesser-included offense where the proof for the offense charged includes the proof necessary to establish the lesser-included offense and there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense.

*Id.* (quoting *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994)); *see also Schmidt v. State*, 278 S.W.3d 353, 362 (Tex. Crim. App. 2009) (stating that "there must be affirmative evidence to rebut the greater element, and the jury may not

19

simply disbelieve evidence establishing the greater" charged offense to entitle defendant to lesser-included offense instruction). In this portion of the analysis, anything more than a scintilla of evidence entitles the defendant to the instruction. *Hall*, 225 S.W.3d at 536. The evidence must establish the lesser-included offense as "a valid, rational alternative to the charged offense." *Id.*; *Williams v. State*, 294 S.W.3d 674, 681 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (stating that "[t]here must be affirmative evidence in the record raising the lesser offense before an instruction is warranted").

The Court of Criminal Appeals has held that the test for determining whether evidence is legally sufficient and the test for determining whether to submit a lesser-included offense instruction are "quite different." *Wasylina v. State*, 275 S.W.3d 908, 909 (Tex. Crim. App. 2009) (quoting *Hampton v. State*, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005)). "The evidence could easily be legally sufficient to support a conviction for a lesser-included offense but not justify the submission of a lesser-included-offense instruction because the evidence does not show that the defendant is guilty *only* of the lesser-included offense." *See id.* at 909–10 (emphasis in original).

The offense of resisting arrest contains "several elements that are not functionally the same or less than those required to prove the charged offense" of assault on a public servant. *See Gilmore v. State*, 44 S.W.3d 92, 96 (Tex. App.—

Beaumont 2001, pet. ref'd). First, the offense of assault on a public servant "includes a reckless mental state whereas resisting arrest proscribes only intentional conduct." *Id.* The assault offense requires the infliction of bodily injury upon the public servant "whereas resisting arrest may occur with no injury at all to the peace officer involved." *Id.* And finally, resisting arrest

> requires proof that the peace officer be in the process of effecting an arrest, search, or transportation of the actor when the actor uses "force" to "prevent or obstruct" the attempted conduct; in contrast, the assault offense requires the public servant be "lawfully discharging an official duty," which may or may not involve an arrest.

*Id.*; *see also Dunklin v. State*, 194 S.W.3d 14, 22 (Tex. App.—Tyler 2006, no pet.) (noting that resisting arrest requires proof that defendant prevented or obstructed peace officer from effecting arrest, which is element not required for assault on public servant).

Nevertheless, appellant argues that, under the circumstances of this case, the offense under section 38.03 constituted a lesser-included offense of the offense charged under section 22.01. Appellant argues on appeal that, while it was clear that Officers Cisneros and Owens both suffered injuries during the incident, a rational jury could have concluded that appellant was guilty only of resisting arrest, that the officers' injuries were "merely incidental," and that appellant "should not be found guilty of those unintentional injuries." He thus argues that the jury could have found that he did not have the mens rea necessary for the offense of assault

21

on a public servant, but only for resisting arrest. He points out that the undisputed testimony reflects that he began physically struggling with Officers Cisneros and Owens when they attempted to move him to a different holding cell and that, during the struggle, he caused bodily injury to both officers; specifically, he scratched both of their arms with his fingernails.

Although the officers involved testified to their injuries, and the trial court admitted photographs depicting their injuries, appellant attempts to cast his actions solely as "resisting transport." However, he points to no evidence in the record supporting his contention that if he was guilty, he was guilty *only* of resisting arrest instead of assault on a public servant because the officers' injuries were incidental rather than the result of appellant's intentional acts. *See Wasylina*, 275 S.W.3d at 909–10; *Hall*, 225 S.W.3d at 536. Nor could he point to such evidence under the circumstances of this case because the proof required to show that he was guilty of resisting arrest is essentially different from the proof required to show assault on a public servant. To prove assault on a public servant, the State had to show that appellant, in fact, injured the officers and that he did so at least recklessly. By finding him guilty, the jury found that he did injure the officers at least recklessly, and the evidence supports that finding. Whether appellant was resisting arrest when he inflicted injury on them is irrelevant to proof of the offense of assault on a

public servant. The jury needed only to find that the *officers* were performing an official duty, namely, transporting appellant, not that *appellant* was resisting arrest.

The Court of Criminal Appeals addressed a factually analogous situation in *Lofton v. State*. 45 S.W.3d 649 (Tex. Crim. App. 2001). In *Lofton*, officers responded to a domestic disturbance call at a residence. *Id.* at 650. After speaking with the complainant and Lofton, the officers decided to arrest Lofton for assault. *Id.* When one of the officers attempted to arrest him, Lofton "slapped [the officer's] hands away." *Id.* The officer again attempted to restrain Lofton, and Lofton "struck [Officer] Munoz twice in the face." *Id.* The officer testified that he suffered pain and a cut on his face after Lofton struck him. *Id.* at 650–51.

On appeal, the Austin Court of Appeals reversed Lofton's conviction, holding that "the jury could have rationally believed that [Lofton] intended to obstruct the arrest and the force he used was incident to that intent" and that Lofton was therefore entitled to an instruction on the lesser-included offense of resisting arrest. *Id.* at 651 (quoting *Lofton v. State*, 6 S.W.3d 796, 800 (Tex. App.—Austin 1999)). The Court of Criminal Appeals disagreed, noting that Lofton "struck a police officer twice in the face during the officer's attempt to arrest [him], causing the officer to suffer pain and a cut on his face." *Id.* at 652. The court further noted that "[e]ven if [Lofton] had intended only to prevent his arrest, the force used by [Lofton] against [Officer] Munoz, at the very least, recklessly caused Munoz to

suffer a bodily injury." *Id.* The Court of Criminal Appeals thus concluded that "[r]egardless of [Lofton's] intent, the State proved that [Lofton] assaulted Munoz. Resisting arrest was not a rational alternative to assault on a public servant in the instant case." *Id.*; *see also Ortega v. State*, 207 S.W.3d 911, 918 (Tex. App.—Corpus Christi 2006, no pet.) (holding that trial court did not err in refusing lesser-included-offense instruction on resisting arrest when "[t]he evidence show[ed] that appellant struck the arresting officer in the chest and face using his fists"); *Oiler v. State*, 77 S.W.3d 849, 852 (Tex. App.—Corpus Christi 2002, pet. ref'd) ("[A]ppellant used force to prevent the police officers from effecting his arrest, kicking one of the officers in the process. The officer testified he was injured when appellant kicked him. Under the holding in *Lofton*, we now hold that appellant was not entitled to a lesser-included offense instruction [on resisting arrest].").

Likewise, in *Gumpert v. State*, there was "evidence that Gumpert's intent was to resist arrest, but other evidence showing that in the course of resisting arrest Gumpert kicked [Officer] Reese." 48 S.W.3d 450, 454 (Tex. App.—Texarkana 2001, pet. ref'd). The court of appeals observed, "This evidence showed that Gumpert recklessly caused bodily injury in disregarding the substantial nonjustifiable risk that his struggling, flailing about, and kicking could result in bodily injury to Reese and that bodily injury in fact resulted." *Id.* The court

24

concluded, "Following the guidelines of the Texas Court of Criminal Appeals [in *Lofton*], resisting arrest was not a rational alternative to assault on a public servant in the present case, and the trial court was correct to refuse the requested instruction for resisting arrest" as a lesser-included offense of assault on a public servant. *Id.*

Here, appellant argues that he "resisted efforts to handcuff and transport him to a different cell." But even if he intended only to resist transport, as he contends, the evidence is sufficient for a jury reasonably to have determined that by physically struggling with the officers during the process of resisting transport—including biting and scratching the officers—he, at the least, recklessly caused the officers' injuries. *See Lofton*, 45 S.W.3d at 652. Thus, in resisting arrest, appellant also assaulted two public servants. Appellant has therefore failed to present evidence that if he was guilty, he was guilty *only* of resisting arrest. *See Wasylina*, 275 S.W.3d at 909–10; *Hall*, 225 S.W.3d at 536.

Therefore, under the facts of this case, resisting arrest was not "a valid, rational alternative to the charged offense," as required for a lesser-included offense. *See Hall*, 225 S.W.3d at 536; *Lofton*, 45 S.W.3d at 652; *Gumpert*, 48 S.W.3d at 454. We hold that the trial court did not abuse its discretion by refusing appellant's requested lesser-included offense instruction.

We overrule appellant's first issue.

## C. Denial of Self-Defense Instruction

When a defensive theory is raised by the evidence from any source, the theory must be submitted to the jury. *See Brown v. State*, 955 S.W.2d 276, 279 (Tex. Crim. App. 1997). If the defense is supported by the evidence, the defendant is entitled to an instruction on that defense, regardless of whether the supporting evidence is strong, feeble, unimpeached, or contradicted, and even when the trial court is of the opinion that the supporting evidence is not credible. *See Shaw v. State*, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007); *see also Walters v. State*, 247 S.W.3d 204, 209 (Tex. Crim. App. 2007) (holding same). We review a trial court's decision not to include an instruction on a defensive issue in the charge for an abuse of discretion, and we view the evidence in the light most favorable to the defendant's requested submission. *See Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006); *Love v. State*, 199 S.W.3d 447, 455 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

Penal Code section 9.31(c) provides:

The use of force to resist an arrest or search is justified:

(1) if, before the actor offers any resistance, the peace officer . . . uses or attempts to use greater force than necessary to make the arrest or search; and

(2) when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's . . . use or attempted use of greater force than necessary.

26

TEX. PENAL CODE ANN. § 9.31(c) (Vernon 2011). Under section 9.31(c), "a defendant must show greater force than necessary on the part of the police officer before the justification of self-defense is applicable." *Porteous v. State*, 259 S.W.3d 741, 748 (Tex. App.—Houston [1st Dist.] 2007, pet. dism'd). Thus, to be entitled to an instruction pursuant to section 9.31(c), "there must be some evidence in the record to raise the issue of whether the peace officer used or attempted to use greater force than necessary in attempting to arrest or search the defendant." *Id.*

As a threshold issue, the State argues that appellant is not entitled to a self-defense instruction under section 9.31(c) because that section, by its plain language, applies to the use of force to "resist an arrest or search," not to resist a "transport," as appellant claims, and appellant had already been arrested at the time of the incident at issue. We agree with the State.

In *Ward v. State*, the Waco Court of Appeals addressed a similar argument. *See* 143 S.W.3d 271 (Tex. App.—Waco 2004, pet. ref'd). A jury convicted Ward of assaulting a sheriff's deputy who had been attempting to move him from one cell to another within the jail. *Id.* at 272. In the charge, the trial court included an instruction on the general law of self-defense under section 9.31(a), but it did not include an instruction specifically pursuant to section 9.31(c), concerning the use of force to resist an arrest or search. *Id.* at 273. On appeal, Ward argued that he was entitled to an instruction under section 9.31(c) "because the deputy's attempt

27

to remove him from the jail cell constitutes an 'arrest.'" *Id.* The Waco court considered the definition of "arrest" contained in Code of Criminal Procedure article 15.22: "A person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant." *Id.* (quoting TEX. CODE CRIM. PROC. ANN. art. 15.22). The court then stated, "Under the plain language of this statute, a person is arrested when an officer takes custody of the person pursuant to an arrest warrant or pursuant to a warrantless arrest." *Id.* The court concluded that "[t]his definition on its face does not apply to a jail inmate being transferred from one cell to another" and overruled Ward's contention that he was entitled to an instruction under section 9.31(c). *Id.*

We find the reasoning of the Waco court in *Ward* persuasive. The plain language of section 9.31(c) addresses the use of force by a defendant only to "resist an arrest or search." TEX. PENAL CODE ANN. § 9.31(c). The statute does not state that the use of force to resist "transport" or another police action is justified. Section 9.31(c), by its terms, is limited to instances in which the defendant uses force to resist "arrest or search." *See Porteous*, 259 S.W.3d at 747 ("[T]he right to use self-defense against a police officer who is attempting to effect an arrest is limited."). At the time of the incident at issue in this case, appellant had already been arrested and confined in the Texas City Jail. Moving him from one holding

28

cell within the Texas City Jail to another does not constitute an "arrest." *See Ward*, 143 S.W.3d at 273; *see also* TEX. CODE CRIM. PROC. ANN. art. 15.22 (Vernon 2015) ("A person is arrested when he has been actually placed under restraint or taken into custody by an officer . . . ."). We therefore hold that section 9.31(c) is not applicable to this case.

We overrule appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Massengale, and Lloyd.

Publish. TEX. R. APP. P. 47.2(b).