**Affirmed and Opinion Filed August 16, 2021**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-19-01368-CR

**DENNIS WALKER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 1**
**Dallas County, Texas**
**Trial Court Cause No. F-1918616-H**

## MEMORANDUM OPINION

Before Justices Osborne, Pedersen, III, and Nowell
Opinion by Justice Pedersen, III

Appellant pleaded not guilty to a single charge of aggravated assault against a public servant. Appellant waived his right to a jury trial and proceeded with a trial before the court. The trial court found him guilty of the lesser-included offense of assault on a public servant. The trial court assessed appellant's punishment at four years. Appellant raises two issues in this court—asserting that the evidence is insufficient to prove (i) that he did not act in self-defense and (ii) that a detention services officer was acting in the lawful discharge of his official duties. The State raises a cross-point—seeking to correct an error in the judgment regarding appellant's plea. As modified, we affirm the judgment of the trial court.

# I. BACKGROUND

## A. February 16, 2019

On February 16, 2019, appellant was serving a sentence in a Dallas County detention facility. At that time, appellant was twenty-nine years old and about six feet, one inch tall. That morning, appellant was a part of a disturbance in the subacute housing unit. To quell the disturbance, three detention officers moved appellant out of the subacute housing unit and into a single cell in the acute housing unit. Appellant resisted the move and addressed the officers using expletives. Nevertheless, the officers succeeded in placing appellant into single cell one in the acute housing unit. Appellant was alone inside the cell.

At about 10:20 a.m. on February 16, 2019, appellant requested the use of a portable phone to make a call to his sister. Seventy-year-old Detention Service Officer George Williams was nearby, walking with a nurse who was passing medication to inmates. Williams provided the portable phone to appellant—with the body of the phone remaining outside of the cell and the phone receiver fed inside, through to appellant, through a feeder port on the cell door. Appellant sat down and called his sister, but she did not pick up. Appellant began talking loudly to another inmate across the hall through the feeder port. Williams asked appellant to return the phone receiver two or three times, but appellant refused.

Williams asked assistance from Detention Service Officer Kelley Moore-Lee, so they could open the cell door to retrieve the phone receiver, which appellant held

in his hand. Moore-Lee asked appellant to return the phone, but appellant ignored her. In an effort to retrieve the phone receiver, Williams opened the cell door and Moore-Lee patted appellant's hand, instructing appellant to let go of the receiver. Appellant raised to stand, and Williams pushed appellant down with a stiff-arm on appellant's upper chest using his left arm and hand. Williams attempted to wrestle the receiver away from appellant with his right arm and hand. Williams obtained the phone receiver from appellant. Williams let appellant up and held appellant out, immobilizing him, so Moore-Lee could exit the cell.

While Williams held appellant up, appellant punched Williams in the head; Williams did not see the punch coming. Appellant bit Williams on the left side of his head. While standing, appellant and Williams wrestled with one another and went to the ground, with Williams landing on top of appellant. Appellant looped his arm around Williams's neck and bit Williams's arm. Appellant scratched Williams in the head, arms, and face. Williams did not hit appellant or fight back. Moore-Lee called for officer assistance. She and Detention Service Officer Christopher Loudamy intervened to separate appellant and Williams. Appellant resisted separating from Williams, but the officers were able to separate appellant and Williams. About eight to ten officers worked together to remove appellant from single cell one and to place him into single cell two in the acute housing unit. The entire incident lasted about fifteen minutes.

## B. Trial and Appeal

After appellant's indictment, the trial court held a bench trial on October 25, 2019. Five witnesses testified during the trial: Officer Williams, Officer Moore-Lee, Officer Loudamy, appellant, and Dominic McCleary—an inmate who did not see the incident but overheard the scuffle. After hearing testimony from witnesses and admitting several documents into evidence, the trial court found appellant guilty of the lesser included offense of assault of a public servant—a third-degree felony. The trial court proceeded to the punishment phase, and appellant stipulated to several prior crimes. Appellant then testified on his own behalf during the punishment phase. Thereafter, the trial court sentenced appellant to imprisonment for a period of four years. This appeal followed.

## II.    ISSUES RAISED ON APPEAL

Appellant raises two issues on appeal, which we restate as follows:

1.  The evidence is insufficient to prove Appellant did not act in self-defense.

2.  The evidence is insufficient to prove Sheriff Williams was acting in the lawful discharge of his official duties when he was assaulted by appellant.

Furthermore, the State raises a single cross-point issue as follows:

1.  The State respectfully requests the Court modify the trial court's judgment to remove an indication that Appellant entered an open plea of guilty contrary to the record.

### III.  STANDARD OF REVIEW

When reviewing a challenge to the sufficiency of the evidence supporting a criminal offense, we conduct our review under the single sufficiency standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Acosta v. State*, 429 S.W.3d 621, 624–25 (Tex. Crim. App. 2014). We view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We do not resolve conflicts of fact, weigh evidence, or evaluate the credibility of the witnesses as this is the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We may not substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)

In analyzing legal sufficiency, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton*, 235 S.W.3d at 778. "When the reviewing court is faced with a record supporting contradicting inferences, the court must presume that the jury resolved any such conflicts in favor of the verdict, even if not explicitly stated in the record." *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017) (citing *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012)); *see Jones v. State*, 936 S.W.2d 678, 680 (Tex. App.—Dallas 1996, no pet.) ("If conflicting inferences exist, we must presume the

trier of fact resolved any conflict in favor of the prosecution."). We defer to the factfinder's resolution of conflicting inferences. *Clayton*, 235 S.W.3d at 778. The factfinder may choose to disbelieve all or any part of a witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986) (citing *Esquivel v. State*, 506 S.W.2d 613 (Tex. Crim. App. 1974)). We treat direct and circumstantial evidence equally: circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778.

## IV. DISCUSSION

**Issues One and Two: Whether the Evidence is Insufficient to Prove Appellant Did Not Act in Self-Defense and Whether the Evidence is Insufficient to Prove Williams was Acting in the Lawful Discharge of his Duties**

We address appellant's first two issues jointly as the evidence in question is interrelated. Appellant first asserts that the State "failed to prove beyond a reasonable doubt that Appellant was not justified on biting [Williams] on the top of his head." Appellant second asserts that "Williams was criminally abusing his status at the time Appellant bit him on the head." Appellant questions the sufficiency of the evidence on (i) whether his actions constituted self-defense under Texas Penal Code § 9.31 and (ii) whether Williams' use of force was unreasonable under Texas Penal Code § 9.53.

Texas Penal Code § 22.01 defines the offense of assault:

(a) A person commits an offense if the person:

–6–

(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;

. . .

(b) An offense under Subsection (a)(1) is a Class A misdemeanor, *except that the offense is a felony of the third degree if the offense is committed against*:

(1) *a person the actor knows is a public servant while the public servant is lawfully discharging an official duty*[.]

TEX. PENAL CODE ANN. § 22.01(a)-(b) (emphasis added). Thus, assault of a public servant requires both proof of misdemeanor assault and proof that:

1) the person assaulted was a public servant;
2) the actor knew that the person he assaulted was a public servant;
3) the person assaulted was discharging official duties at the time of the assault;
4) the person assaulted was lawfully discharging official duties.

*Hall v. State*, 158 S.W.3d 470, 473 (Tex. Crim. App. 2005). Texas Penal Code § 1.07 defines "public servant" as "a person . . . employed . . . as one of the following . . . (A) an officer, employee, or agent of government." PENAL § 1.07(a)(41)(a).

In the context of self-defense, "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." PENAL § 9.31(a). A "reasonable belief" is one that an ordinary and prudent man would hold in the same circumstances as the actor. PENAL § 1.07(a)(42). "A defendant has the burden of producing some evidence to support a claim of self-defense." *London v. State*, 325 S.W.3d 197, 202 (Tex. App.—Dallas 2008, pet. ref'd) (citing *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App.

2003)). The State has the burden of persuasion in disproving self-defense, but this burden does not require the state to produce evidence refuting the self-defense claim. *London*, 325 S.W.3d at 202. The burden requires the State to prove its case beyond a reasonable doubt. *Id.* Self-defense is a fact issue to be determined by the factfinder, and a guilty verdict is an implicit finding rejecting the self-defense theory. *Id.*

i.      *Evidence*

At trial, Officers Williams, Moore-Lee, and Loudamy testified appellant had a history of causing fights and other trouble among inmates, which necessitated his removal on several occasions.[1] The record shows Williams was a public servant who was acting in the capacity of a detention service officer at the time of the incident. The record shows Williams was discharging official duties when he provided appellant with the portable phone and when he attempted to obtain return of the portable phone's receiver. As described above, the officers testified that appellant was the aggressor and that Williams did not fight back. The trial court entered, without objection, several photographs of Williams's injuries and medical records. The photographs depict (i) a large, circular bite on the top left-front of Williams's head, (ii) multiple straight cuts on the top of his head, (iii) cuts on his left cheek, (iv) multiple bites on his arms, and (v) scratches and cuts on his arms. Williams's

---

[1] Appellant testified that the moves were "basically always somebody else's fault." Appellant testified that he was moved into the acute housing unit on the morning of February 16, 2019, in relation to a "disagreement" he had with another inmate.

medical records corroborate these injuries. Loudamy testified that appellant refused commands to stop fighting Williams and that he saw no visible injuries to appellant.

Appellant's testimony differed from that of the officers. Appellant testified he saw Williams and Moore-Lee doing rounds of the cells. Appellant testified he knew Williams from before and believed Williams did not like him because they had "verbal altercations in the past." Appellant testified that Williams and Moore-Lee gave him the phone; he called his sister, but she did not pick up. Williams testified he was redialing his sister and was "not paying attention . . . to every word [Williams] was saying" when Williams asked him to return the phone receiver. Appellant testified Williams attempted to roll the portable phone away, and in response, he dropped the phone receiver. Appellant testified that Williams entered the cell after he dropped the phone receiver and that Williams was the aggressor:

> As soon as [Williams] came in, he choked me and put me in a headlock. I'm, like, I bet—while he had me in a headlock, I said, I bet you won't do that if I was standing up. Then he let go.
> . . .
> Before I could stand all the way up, Mr. Williams put me in a choke hold again, put me a headlock again, and I fell back to the floor on my butt. I said, dang, you ain't gone let me get up? You ain't gone let me get up? And he was letting go again. And then I stood up. I stood all the way up. This time I kept -- he choked me again before I stood up, before I could stand all the way up, but this time I kept my balance, and that's when I started wrestling back with him, and I turned myself around.
> . . .

When asked "how did that feel when you were put into the headlock?" Appellant answered:

> I was fearing for my life. I wanted to defend myself. I was already heated about the situation of them putting me in a single cell, because they always put me in a single cell for nothing.

Appellant did not testify that Williams bit, scratched, cut, or punched him. Appellant admitted that he had several convictions dating from June 2000, which were generally assaultive convictions. Appellant admitted that he was in custody in February 2019 in connection with a harassment of a public servant charge, which involved an incident when he "poured urine on a nurse."

McCleary testified that he heard "rumbling" and "scuffling." McCleary testified that—during the incident—he heard another inmate state "man, like, he got him in a choke hold," which McCleary believed referred to Williams choking appellant because McCleary heard others' descriptions that Williams had choked them. The record shows McCleary did not see the incident in question. McCleary testified he had not seen Williams choke anyone before.

### ii.  Analysis

Appellant concedes in his briefing that he was "talking too loud" with the other inmate and that he refused to return the phone receiver. Despite testifying otherwise, appellant concedes in his briefing that he (i) "refused to give the phone back" after Williams entered the cell and (ii) only dropped the phone receiver after Williams stiff-armed him. Nevertheless, appellant argues that he bit Williams in self-defense—so Williams would release the headlock.

Citing Texas Penal Code § 9.31(c), appellant asserts that a use of force to resist a "seizure" is justified if the peace officer uses greater force than necessary to effectuate the seizure. *See* PENAL § 9.31(c) (defining circumstances in which "use of force to resist an arrest or search is justified").[2] Appellant refers to two cases— (i) *Sutton v. State*, 548 S.W.2d 697, 699 (Tex. Crim. App. 1977), *disapproved of by Hall v. State*, 225 S.W.3d 524 (Tex. Crim. App. 2007) and (ii) *Steele v. State*, 490 S.W.3d 117, 131 (Tex. App.—Houston [1st Dist.] 2016, no pet.)—to assert that the use of force to resist a seizure is justified if the peace officer uses greater force than necessary to effect the seizure. Neither *Sutton* nor *Steele* were adjudicated regarding a "seizure" of property. *Sutton* involved a defendant's alleged self-defense under § 9.31(c) in response to an arrest. *Sutton*, 548 S.W.2d at 699-70. *Steele* involved a defendant's alleged self-defense under § 9.31(c) in relation to a "transport." *Steele*, 490 S.W.3d at 131. Appellant refers us to no other citation that § 9.31(c) applies to "seizures" in addition to an "arrest or search." In *Steele*, our sister court distinguished § 9.31(c):

> The plain language of section 9.31(c) addresses the use of force by a defendant only to "resist an arrest or search." PENAL § 9.31(c). The

_____

[2] Texas Penal Code § 9.31(c) provides:

(c) The use of force to resist an arrest or search is justified:

(1) if, before the actor offers any resistance, the peace officer (or person acting at his direction) uses or attempts to use greater force than necessary to make the arrest or search; and

(2) when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's (or other person's) use or attempted use of greater force than necessary.

PENAL § 9.31(c).

statute does not state that the use of force to resist "transport" or another police action is justified. Section 9.31(c), by its terms, is limited to instances in which the defendant uses force to resist "arrest or search."

*Steele*, 490 S.W.3d at 131. We agree with our sister court in the context of § 9.31(c)'s application to a "seizure." Section 9.31(c) of the Texas Penal Code does not state that the use of force to resist a "seizure" of property is justified. *See* PENAL § 9.31(c). Thus, we conclude § 9.31(c) does not apply to appellant's assertion regarding Williams's "seizure" of the phone receiver.

Arguing generally under § 9.31(a), appellant next contends that "[b]ased on [appellant's evidence] the State failed to disprove Appellant's self-defense claim beyond a reasonable doubt." Essentially, appellant asks our Court to "require the state to produce evidence refuting the self-defense claim"—a requirement we have expressly rejected in *London*. 325 S.W.3d at 202.[3] Appellant further argues that Williams used excessive force within the meaning of Texas Penal Code § 9.53. *See* PENAL § 9.53.[4] However, "[k]nowing the innate danger in maintaining a correctional

---

[3] Furthermore, the Texas Court of Criminal Appeals held in *Saxton v. State*:

> In resolving the sufficiency of the evidence issue, *we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt.*

804 S.W.2d 910, 914 (Tex. Crim. App. 1991) (emphasis added).

[4] Texas Penal Code § 9.53 provides:

> An officer or employee of a correctional facility is justified in using force against a person in custody when and to the degree the officer or employee reasonably believes the force is

–12–

facility, the legislature grants correctional officers the right to use reasonable force against an inmate to maintain their own safety, the safety of others, or the security of the prison as a whole." *Hall*, 158 S.W.3d at 475. Here, the record shows Williams used reasonable force (i) to obtain the phone receiver after several requests for the same and (ii) to maintain his and Moore-Lee's safety. The record shows Williams immobilized appellant to allow Moore-Lee to safely exit the cell. Moore-Lee testified appellant then "swung on [Williams]." Williams testified it was then that appellant punched, bit, cut, and scratched him. Three officers testified that Williams did not fight back. Beyond not seeing the punch, Williams specified he did not fight back because he believed appellant was sick due to appellant's use of a medical device—an oxygen tank.[5]

Although the record contains appellant's testimony that Williams fought and choked him, the trier of fact is "the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence." *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). "The fact finder is free to believe or disbelieve the testimony of all witnesses, to reconcile or not reconcile conflicts in testimony, and to accept or reject any or all of the evidence produced by the respective parties." *Huett v. State*, 970 S.W.2d 119, 123 (Tex. App.—Dallas 1998,

---

necessary to maintain the security of the correctional facility, the safety or security of other persons in custody or employed by the correctional facility, or his own safety or security.

PENAL § 9.53

[5] The record shows appellant was not using the oxygen tank during the incident.

no pet.). After reviewing the evidence in the light most favorable to the verdict, we must conclude the trial court did not err in finding the essential elements of assault on a public servant beyond a reasonable doubt. We must accordingly conclude the trial court did not err in its (i) implied rejection of appellant's claim of self-defense and (ii) implied finding that Williams acted in lawful discharge of his official duties. We overrule both of appellant's issues.

**Cross Point: Whether the Trial Court's Judgment Erroneously Included an Indication That Appellant Entered an Open Plea of Guilty Contrary to The Record**

We have the power to correct and reform the judgment of the court below to make the record speak the truth when we have the necessary data and information to do so, or to make any appropriate order as the law and the nature of the case may require. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd); *see* TEX. R. APP. P. 43.2(b). Should a judgment and sentence improperly reflect the findings of the trial court, "the proper remedy is the reformation of the judgment." *Id.* (citing *Aguirre v. State*, 732 S.W.2d 320, 327 (Tex. Crim. App. [Panel Op.] 1982)).

The judgment of the trial court states under the section marked "Terms of Plea Bargain" the phrase "OPEN (TBC)." However, the record shows appellant did not enter a plea bargain agreement at either trial or punishment phase of the case. Thus, the record contains the necessary information for our court to modify the trial court's incorrect judgment. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27

(Tex. Crim. App. 1993). Consequently, we sustain the State's cross point issue. We modify the judgment by deleting the words "OPEN (TBC)" from it in the "Terms of Plea Bargain" section.

### V.    CONCLUSION

As modified, the judgment of the trial court is affirmed.

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE

191368f.u05

Do Not Publish
TEX. R. APP. P. 47



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DENNIS WALKER, Appellant

No. 05-19-01368-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 1, Dallas County, Texas Trial Court Cause No. F-1918616-H. Opinion delivered by Justice Pedersen, III. Justices Osborne and Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** by deletion of the phrase "OPEN (TBC)" from it in the "Terms of Plea Bargain" section. Thus, the judgment shall read as follows:

"Terms of Plea Bargain          "

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 16th day of August, 2021.