

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
| PATRICIO ALEJANDRO CASTANEDA, | | No. 08-14-00192-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 41st District Court |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 20100D04935) |
| | § | |

## **O P I N I O N**

Appellant, Patricio Alejandro Castaneda, appeals his conviction of assault of a public servant pursuant to sections 22.01(a)(1) and (b)(1) of the Texas Penal Code. *See* TEX.PEN.CODE ANN. § 22.01(a)(1), (b)(1)(West Supp. 2015). Specifically, Appellant complains that (1) the evidence was legally insufficient to support his conviction and (2) that he was denied the effective assistance of counsel at the guilt/innocence phase of his bench trial. For the reasons that follow, we affirm.

### **FACTUAL SUMMARY**

A grand jury indicted Appellant with a single count of assault on a public servant. Appellant pled not guilty, waived his right to a jury trial, and went before the court in a bench trial. The State put forth two witnesses, the victim, Officer Miguel Garza, and his supervisor, Corporal Frank Hernandez. On June 25, 2014, the trial court found Appellant guilty and during

the sentencing phase he pled true to two enhancements and habitualization, one for importation and possession with intent to distribute marijuana and misprision of a felony, thereby increasing his sentence to 25 years.

**Officer Miguel Garza's Testimony**

On October 3, 2010, Officer Garza was working as a corrections officer at the El Paso County Sheriff's Office ("EPSO") jail annex. Officer Garza was on duty in pod 1100 when Appellant began banging on the guard station window. Officers told Appellant not to cross a yellow line in the cellblock but he did so anyway, and continued banging on the window, trying to get the officers' attention. Thinking there might be a conflict in the cellblock, Officer Garza and his supervisor, Frank Hernandez, took Appellant out of his cellblock to question him. When the two officers asked Appellant what he needed, Appellant raised his voice and said he needed a wristband because some of the other inmates had taken his wristband. Inmates need a wristband in order to purchase items from the commissary. Officer Garza told Appellant he would get him a wristband later. Appellant continued to talk back, and Officer Garza decided to write Appellant up for crossing the yellow line. Appellant then told Officer Garza not to worry, because "[w]hen I see you out there I'm going to f--k you up."

Officer Garza proceeded to handcuff Appellant, but he would not cooperate. The officer instructed Appellant to turn around and put his hands behind his back. He was positioned behind and to the left of Appellant as he tried to handcuff him. Appellant clinched his arms in front of him to prevent Garza from handcuffing him. Appellant then turned around and hit the upper right side of Officer Garza's stomach with his left forearm. During his testimony, Officer Garza demonstrated how Appellant hit him. According to Officer Garza, Appellant struck him so hard that he fell backward and into the wall of the guard station. Garza felt abdominal pain from

2

Appellant's strike. After regaining his balance, Officer Garza handcuffed Appellant with Hernandez's help. Appellant continued to threaten Garza by saying, "[y]ou wait and see, my brother's going to get you." The officers escorted Appellant out of the cell block and placed him into a cell for violent prisoners pending a transfer.

Officer Garza reported his encounter with Appellant to his supervisors. Included in his report were photographs of where Appellant hit Garza in the stomach. Officer Garza did not follow up with a physician.

### Frank Hernandez's Testimony

The State called Hernandez next. Hernandez was also working in pod 1100 with Garza on October 5, 2010. Hernandez similarly testified that because Appellant was banging on the guard station window, they removed him for questioning. Hernandez heard Appellant talking to Garza about his wristband. Hernandez witnessed the scuffle between Officer Garza and Appellant when Garza attempted to handcuff Appellant. He saw Officer Garza's body move upward as if he had just been hit. Hernandez immediately assisted Officer Garza in securing Appellant. Hernandez testified that he did not see exactly how Appellant struck Garza, but that it looked like he had been hit in the midsection. During cross-examination, Hernandez testified that Garza did not hit a wall after Appellant struck him.

### SUFFICIENCY OF THE EVIDENCE

In his first point of error, Appellant insists that the evidence was insufficient to sustain his conviction because he claims it was physically impossible for him to have struck Officer Garza in the manner in which Officer Garza testified. The State's response characterizes Appellant's argument as a challenge to the credibility of the witnesses who testified at trial. We agree with the State.

3

*Standard of Review*

In conducting our legal sufficiency review, we must examine all of the evidence in a light most favorable to the verdict, and determine whether, based on that evidence and reasonable inferences therefrom, any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime as alleged in the application paragraph of the jury charge. *Hooper v. State*, 214 S.W.3d 9, 16 (Tex.Crim.App. 2007), *citing Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999), *holding modified by Guidry v. State*, 9 S.W.3d 133 (Tex.Crim.App. 1999). In *Malik v. State*, the Court of Criminal Appeals articulated the modern Texas standard for ascertaining what the "essential elements of the crime" are; they are "the elements of the offense as defined by the hypothetically correct jury charge for the case." 953 S.W.2d 234, 240 (Tex.Crim.App. 1997); *see also Clinton v. State*, 354 S.W.3d 795, 799 (Tex.Crim.App. 2011). A hypothetically correct jury charge is one that at least "accurately sets out the law, is authorized by the indictment, and does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.

In our analysis, we do not reexamine the evidence and impose our own judgment as to whether the evidence establishes guilt beyond a reasonable doubt, but determine only if the findings by the trier of fact are rational. *See Lyon v. State*, 885 S.W.2d 506, 516-17 (Tex.App.-- El Paso 1994, pet. ref'd). The exclusive judge of the credibility of a witness is the fact finder. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex.Crim.App. 2008). The fact finder also determines the weight that is given to each witness and their testimony, and may choose to believe some testimony and disbelieve other testimony. *Id.* Therefore, we do not assign credibility to

4

witnesses or resolve any conflicts of fact. *Id.*; *Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991); *Belton v. State*, 900 S.W.2d 886, 897 (Tex.App.--El Paso 1995, pet. ref'd). We resolve any inconsistencies in the testimony in favor of the verdict rendered. *Lancon*, 253 S.W.3d at 707.

The standard of review for sufficiency of the evidence applies to both direct and circumstantial evidence cases. *See Powell v. State*, 194 S.W.3d 503, 506 (Tex.Crim.App. 2006); *Garcia v. State*, 871 S.W.2d 279, 280 (Tex.App.--El Paso 1994, no pet.). If we sustain a legal sufficiency challenge, it follows that we must render a judgment of acquittal. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996), *overruled on other grounds by Brooks v. State*, 323 S.W.3d 893 (Tex.Crim.App. 2010).

### *Assault on a Public Servant*

To convict Appellant of the offense of assault of a public servant, the trial court was required to find that Appellant intentionally, knowingly, or recklessly caused bodily injury to a person he knows is a public servant, here, Officer Garza, while Officer Garza was lawfully discharging his official duty. *See* TEX.PEN.CODE ANN. § 22.01(a)(1), (b)(1); *see Dawson v. State*, No. 08-11-00203-CR, 2013 WL 4017433, at *4 (Tex.App.--El Paso Aug. 7, 2013, no pet.)(not designated for publication); *Thomas v. State*, 303 S.W.3d 331, 333 (Tex.App.--El Paso 2009, not pet.)(cases holding that the manner and means of an assault offense is not an essential element of the offense and thus need not be included in the hypothetically correct jury charge).

Appellant only challenges that the evidence is insufficient to prove he caused bodily injury to Officer Garza. Appellant specifically argues that because Officer Garza testified that he was behind Appellant when he grabbed for his right wrist, a fact finder could not convict Appellant of striking Garza on his right side, because Appellant used his left forearm. Moreover,

5

Appellant complains that no other physical evidence was admitted, and Hernandez testified that he did not see the strike itself.

Appellant's sufficiency argument is essentially a challenge to the credibility of the State's witnesses. *See, e.g., Young v. State*, No. 14-10-00406-CR, 2011 WL 3556934, at *4 (Tex.App.--Houston [14th Dist.] Aug. 11, 2011, no pet.)(not designated for publication)(finding evidence sufficient where appellant's argument that it was physically impossible for him to have thrown a baggie of cocaine to where it was found under a house was simply a credibility issue to be determined by the trier of fact); *Orsag v. State*, 312 S.W.3d 105, 115 (Tex.App.--Houston [14th Dist.] 2010, pet. ref'd); *Rideaux v. State*, No. 01-06-00399-CR, 2007 WL 2743589, at *1 (Tex.App.--Houston [1st Dist.] Sept. 20, 2007, no pet.)(not designated for publication)(evidence also sufficient to sustain appellant's conviction where his argument that it was physically impossible for him to have been in the crime-scene apartment and not be splattered with blood was merely a credibility issue for the trier of fact); *Ansari v. State*, No. 05-99-01752-CR, 2001 WL 243794, at *4 (Tex.App.--Dallas Mar. 13, 2001, pet. ref'd)(not designated for publication) (explaining that the physical possibility or impossibility that appellant could reach the victim's genital area from where he was positioned in the vehicle was a matter of weight and credibility for the trier of fact). As in the cases cited above, whether Appellant was capable of striking Officer Garza in the manner in which Officer Garza testified is similarly a matter of weight and credibility of the witnesses, and therefore, a matter to be decided by the trier of fact.

Moreover, as the State correctly points out in its brief, the trial court observed Officer Garza's reenactment of the incident. Our case law dictates that we give greater deference to a trial court's credibility determinations when physical demonstrations were given. *Morales v. State*, 293 S.W.3d 901, 909 (Tex.App.--Texarkana 2009, pet. ref'd)(recognizing that the

6

deference to be accorded a trier of fact's credibility determination is especially strong when there were physical demonstrations or gestures given in the presence of the trier of fact but which may not have been explicitly described or detailed in the record); *Rogers v. State*, 756 S.W.2d 332, 336-37 (Tex.App.--Houston [14th Dist.] 1988, pet. ref'd); *Gaona v. State*, 733 S.W.2d 611, 613 n.1 (Tex.App.--Corpus Christi 1987, pet. ref'd)(explaining that when such descriptions or demonstrations appear in an appellate record without further explanation, we can presume that the undescribed act supports the [fact finder's] findings). Therefore, we find that the trial court could have reasonably concluded that Appellant caused the requisite bodily injury to Officer Garza. We overrule Issue One.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In Issue Two, Appellant generally claims that he received ineffective assistance during the guilt/innocence phase of his trial because of the brevity of counsel's cross-examination of the State's witnesses and his closing argument statements. His claim appears to be broken down into four sub-parts: (1) trial counsel failed to advocate for him at trial; (2) trial counsel did not present a justification defense; (3) trial counsel failed to argue for a lesser-included offense; and (4) trial counsel performed his closing argument inadequately.

### *Standard of Review*

We follow the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), to determine whether a defendant received ineffective assistance of counsel. To prevail, Appellant must show that: (1) his attorney's performance was deficient; and (2) that his attorney's deficient performance prejudiced his defense. *Smith v. State*, 285 S.W.3d 333, 340 (Tex.Crim.App. 2009); *Vasquez v. State*, 830 S.W.2d 948, 949 (Tex.Crim.App. 1992). Under the first prong, the attorney's performance must be shown to have

fallen below an objective standard of reasonableness. *Perez v. State*, 310 S.W.3d 890, 893 (Tex.Crim.App. 2010); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App. 1999). Under the second prong, Appellant must establish that there is a reasonable probability that but for his attorney's deficient performance, the outcome of his case would have been different. *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2069; *Thompson*, 9 S.W.3d at 812. "Reasonable probability" is that which is "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Jackson v. State*, 973 S.W.2d 954, 956 (Tex.Crim.App. 1998). If this two-pronged test is not satisfied the ineffective assistance of counsel claim is defeated. *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex.Crim.App. 2003).

On review, we presume that the attorney's representation fell within the wide range of reasonable and professional assistance. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex.Crim.App. 2001), *citing Tong v. State*, 25 S.W.3d 707, 712 (Tex.Crim.App. 2000). Ineffective assistance claims must be firmly founded in the record to overcome this presumption. *Thompson*, 9 S.W.3d at 813. In most cases, this task is very difficult because the record on direct appeal is undeveloped and cannot reflect trial counsel's failings. *Id.* at 813-14. Where the record is silent and fails to provide an explanation for the attorney's conduct, as in this case, the strong presumption of reasonable assistance is not overcome. *Rylander*, 101 S.W.3d at 110-11. We do not engage in speculation in order to find ineffective assistance when the record is silent as to an attorney's trial strategy. *Robinson v. State*, 16 S.W.3d 808, 813 n.7 (Tex.Crim.App. 2000). Accordingly, when the record lacks evidence of the reasoning behind trial counsel's actions, trial counsel's performance cannot be found to be deficient. *Rylander*, 101 S.W.3d at 110-11; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994).

### Closing Argument

Appellant first asserts that during closing arguments, his trial counsel could have made a more strenuous attack on Officer Garza's testimony. Appellant insists that had his counsel done so, a fact finder would not have convicted him of "striking the Officer in the Officer's right side, using Appellant's left forearm."

As we have previously recognized, closing argument is an area where trial strategy is most evident. *Ruiz v. State*, No. 08-04-00102-CR, 2005 WL 2469659, at *13 (Tex.App.--El Paso Oct. 6, 2005, no pet.)(not designated for publication); *Thompson v. State*, 915 S.W.2d 897, 904 (Tex.App.--Houston [1st Dist.] 1996, pet. ref'd). Therefore, we will review matters of trial strategy only if an attorney's actions are without any plausible basis. *Id.*

In the instant case, the record reflects that trial counsel attempted to undermine the credibility of Officer Garza's testimony. He did so by emphasizing the contradictions that existed between Officer Garza's recollection of the incident and Hernandez's recollection; and how the photographs taken of Garza's stomach failed to depict any type of injury that might be consistent with the attack. Appellant's contention that he would not have been convicted had his counsel made a more strenuous attack on Officer Garza's testimony is mere speculation. We cannot conclude that Appellant has met his burden in establishing that his trial counsel rendered ineffective assistance of counsel. Such claims must be "firmly founded" in the record and proven by a preponderance of the evidence, and here, they are not. *See Thompson*, 9 S.W.3d at 813.

### Justification Defense

Appellant also claims that his trial counsel was ineffective because he could have presented a justification defense under sections 9.02 and 9.21 of the Texas Penal Code which the

State would have had to disprove beyond a reasonable doubt. Section 9.02 provides that it is a defense to prosecution that the conduct in question is justified under Chapter 9 of the Texas Penal Code. *See* TEX.PEN.CODE ANN. § 9.01 (West 2011). Section 9.21 provides that an actor's conduct is justified if the actor reasonably believes that his conduct is required or authorized to assist a public servant in the performance of his official duties. *Id.* at § 9.21(d)(2). It appears that Appellant's argument is based on Officer Garza's testimony that he did not rescind his order to Appellant directing him to turn around and place his hands behind his back. From this testimony, Appellant argues that if he "made a belated attempt to place his hands behind his back he could have made incidental contact with Officer Garza, who was definitely behind him."

Rather than negating any element of an offense, a justification defense only excuses what would otherwise constitute criminal conduct. *Shaw v. State*, 243 S.W.3d 647, 659 (Tex.Crim.App. 2007)(defendant is entitled to jury instruction on justification defense only "when the defendant's defensive evidence essentially admits to every element of the offense, including the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct"). Therefore, in order for Appellant to rely on a justification defense, he must first admit to actually committing the crime with which he was charged. *Id.* at 659; *Rodriguez v. State*, 368 S.W.3d 821, 825 (Tex.App.--Houston [14th Dist.] 2012, no pet.)(defendant was precluded from asserting a justification defense where he failed to testify, stipulate, or otherwise proffer evidence admitting he was engaged in the proscribed conduct); *Hubbard v. State*, 133 S.W.3d 797, 801-02 (Tex.App.--Texarkana 2004, pet. ref'd)(defendant not entitled to defensive instruction on justification unless he "sufficiently admits conduct underlying the offense and provides evidence justifying a defensive instruction").

The record reflects no evidence to indicate Appellant may be entitled to assert a justification defense. In fact, the record is clear that he declined to admit any of essential elements of assault of a public servant. Therefore, because the record illustrates that Appellant is not entitled to assert a justification defense, we cannot conclude that his trial counsel rendered ineffective assistance of counsel by not raising a defense argument.

### *Lesser-Included Offense*

Third, Appellant contends his counsel rendered ineffective assistance because he could have advocated for a lesser-included offense, namely "resisting arrest." TEX.PEN.CODE ANN. § 38.03 (West 2011). We apply the *Aguilar/Rousseau* test to determine whether an instruction on a lesser-included offense should be given to the fact finder. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex.Crim.App. 2012); *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex.Crim.App. 1993); *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex.Crim.App. 1985). First, we determine if the proof necessary to establish the charged offense also includes the lesser offense. *Cavazos*, 382 S.W.3d at 382; *Hall v. State*, 225 S.W.3d 524, 535-36 (Tex.Crim.App. 2007). If this threshold is satisfied, then we consider whether the evidence shows that if Appellant is guilty, he is guilty only of the lesser offense. *Cavazos*, 382 S.W.3d at 382. This first step is a question of law, and is not dependent upon the evidence raised during trial. *Id.* In fact, it may be performed by the trial judge before trial begins or, as here, on appeal. *Id.* For this step, we compare the elements alleged in the indictment with the elements of the lesser offense. *Id.*

Article 37.09 of the Texas Code of Criminal Procedure dictates that an offense is a lesser-included offense if "(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charge;" or "(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission." TEX.CODE

CRIM.PROC.ANN. art. 37.09 (1),(3)(West 2006).  The Court of Criminal Appeals has determined that we are to use the cognate-pleadings approach to determine whether an offense qualifies as a lesser-included offense under article 37.09(1).  *Ex parte Watson*, 306 S.W.3d 259, 271 (Tex.Crim.App. 2009)(op. on reh'g).  In *Watson*, the Court of Criminal Appeals explained that:

> An offense is a lesser-included offense of another offense, under Article 37.09(i) of the Code of Criminal Procedure, if the indictment for the greater-inclusive offense either: (1) alleges all of the elements of the lesser-included offense, or (2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced.  Both statutory elements and any descriptive averments alleged in the indictment for the greater-inclusive offense should be compared to the statutory elements of the lesser included offense.  If a descriptive averment in the indictment for the greater offense is identical to an element of the lesser offense, or if an element of the lesser offense may be deduced from a descriptive averment in the indictment for the greater-inclusive offense, this should be factored into the lesser-included-offense analysis in asking whether all of the elements of the lesser offense are contained with the allegations of the greater offense.

*Id.* at 273.  The elements of the lesser-included offense do not have to be pled in the indictment if they can be deduced from facts alleged in that indictment.  *Cavazos*, 382 S.W.3d at 383.  In this type of situation, we may include the functional-equivalence as part of our lesser-included-offense analysis.  *Id.* at 383.  Using functional-equivalence, we "examine the elements of the lesser offense and decide whether they are functionally the same or less than those required to prove the charged offense."  *McKithan v. State*, 324 S.W.3d 582, 588 (Tex.Crim.App. 2010), *citing Farrakhan v. State*, 247 S.W.3d 720, 722-23 (Tex.Crim.App. 2008).  Finally, an offense may be a lesser-included offense if it differs from the charged offense only in the respect that a less culpable mental state is sufficient to establish its commission.  *See* TEX.CODE CRIM.PROC.ANN. art. 37.09(3).

If we find that the offense is a lesser-included offense under either article 37.09(1) or (3), we move to the second step of the *Aguilar/Rousseau* test and evaluate whether there is some

evidence that would permit a rational jury to find that, if Appellant is guilty, he is guilty of the lesser offense only. *Cavazos*, 382 S.W.3d at 383; *Hall*, 225 S.W.3d at 536; *Mathis v. State*, 67 S.W.3d 918, 925 (Tex.Crim.App. 2002). Unlike the first step, this second step if a fact question and is based on the evidence presented during trial. *Cavazos*, 382 S.W.3d at 383. If we find that some evidence from any source raises a fact issue on whether Appellant is guilty of only the lesser offense, regardless of whether the evidence is weak, impeached, or contradicted, then Appellant is entitled to an instruction on a lesser-included offense. *Id.*; *Bell v. State*, 693 S.W.2d 434, 442 (Tex.Crim.App. 1985).

The indictment here alleged that Appellant "did then and there intentionally, knowingly, and recklessly cause bodily injury to [Officer Garza], a person the [Appellant] knew was a public servant, to-wit: an El Paso County detention officer, by striking [Officer Garza] about the body with said [Appellant's] arm and said offense was committed by [Appellant] while the said [Officer Garza] was lawfully discharging an official duty." Conviction of the offense as charged thus required the State to prove Appellant intentionally, knowingly, or recklessly caused bodily injury to the officer, knowing him to be a public servant lawfully discharging an official duty. TEX.PEN.CODE ANN. § 22.01(a), (b)(1).

By contrast, the elements of the offense of resisting arrest are that a person (1) intentionally prevents or obstructs; (2) a person he knows is a peace officer; (3) from effecting an arrest of the actor; (4) by using force against the peace officer. *Dunklin v. State*, 194 S.W.3d 14, 22 (Tex.App.--Tyler 2006, no pet.), *citing* TEX.PEN.CODE ANN. § 38.03(a). Assault on a public servant constitutes a felony offense, *id.* at § 22.01(b)(1), while resisting arrest is typically a misdemeanor offense. *Id.* at § 38.03(c).

13

The court in *Johnson v. State*, No. 07-09-00251-CR, 2011 WL 677347, at *2 (Tex.App.--Amarillo Feb. 25, 2011, pet. ref'd)(not designated for publication), faced a similar issue as we do here and turned to *Gilmore v. State*, 44 S.W.3d 92, 95-96 (Tex.App.--Beaumont 2001, pet. ref'd), for instruction. While the *Gilmore* court's analysis did not entirely follow the cognate pleadings approach later adopted by the Court of Criminal Appeals in *Hall*, 225 S.W.3d at 535-36, we agree with the *Johnson* court that its analysis is still instructive. When the *Gilmore* court compared the elements of the alleged lesser-included offense of resisting arrest with those of assault of a public servant, it first noted that the assault offense permitted conviction on a knowing or reckless culpable mental state while resisting arrest proscribes only intentional conduct. 44 S.W.3d at 96. The same can be said of the assault for which Appellant was convicted.

The Austin court of appeals also acknowledged this mental state distinction in *Lofton v. State*, 6 S.W.3d 796, 799 (Tex.App.--Austin 1999), *rev'd*, 45 S.W.3d 649 (Tex.Crim.App. 2001). In *Lofton*, several police officers responded to a domestic disturbance call. 45 S.W.3d at 650-51. Upon arrival, officers found Lofton upset and belligerent and when the officers attempted to arrest him, he attempted to flee, and then engaged in a struggle with the officers, ultimately striking one of them in the face. *Id.* According to police officer testimony, Lofton stated, "You're not arresting me, you'll have to kill me." *Id.* Eventually the officers overpowered Lofton and placed him in handcuffs. *Id.* Lofton was later convicted of assault on a public servant, and appealed, similarly arguing that the trial court erred in refusing a jury instruction on the lesser-included offense of resisting arrest. *Id.* The court of appeals held that the evidence at trial was sufficient to support either a conviction for resisting arrest, or one for assault, explaining that "[f]rom the evidence before it, the jury could have rationally believed that

14

appellant intended to obstruct the arrest and the force he used was incident to that intent. *Lofton*, 6 S.W.3d at 800. The Court of Criminal Appeals reversed the court of appeals' decision. It stated that, regardless of his intent, Lofton had used force against a police officer and had "at the very least, recklessly caused [the police officer] to suffer a bodily injury." *Lofton*, 45 S.W.3d at 652. The court further held that "[e]ven if appellant by his actions has intended to prevent the arrest, this does not negate the evidence that his chosen method of doing so was to assault the arresting officer." *Id.* at 653 (Meyers, J., dissenting.). The Court of Criminal Appeals concluded that, because the officer was injured when Lofton resisted the arresting officers, he was guilty of assault, and could not be guilty only of the lesser-included offense of resisting arrest. *See id.* at 652.

Here, Appellant used force to prevent Officer Garza from placing him in handcuffs, striking Officer Garza in the abdomen in the process. Officer Garza testified during trial that he felt pain when Appellant struck him and hit the guard station wall as a result. Following the guidelines that the Court of Criminal Appeals has given us, resisting arrest would not have been a proper lesser-included offense of assaulting a public servant in this instance. Therefore, defense counsel did not render ineffective assistance in not advocating for such an instruction.

### *Misstatement Of The Record*

Finally, Appellant contends in his fourth sub-argument that trial counsel rendered ineffective assistance when he made "blatant and material misrepresentations of the record," specifically, when he mistakenly stated to the trial court that the State failed to prove that Officer Garza felt pain.

Even acknowledging counsel's misstatement of the record, we cannot conclude that such statements were deficient. Trial counsel's performance is deficient only when it falls outside the

range of reasonable and professional norms. *Strickland*, 446 U.S. at 687-88, 104 S.Ct. at 2064; *Lopez*, 343 S.W.3d at 142. By no means do we require trial counsel to adhere to a standard of perfection. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex.Crim.App. 2006)(holding that the "right to effective assistance of counsel merely ensures the right to reasonably effective [not perfect] assistance."). Isolated instances in the record reflecting errors of commission or omission do not cause counsel to be ineffective. *Bridge v. State*, 726 S.W.2d 558, 571 (Tex.Crim.App. 1986); *Warren v. State*, No. 03-04-00194-CR, 2006 WL 504955, at *8 (Tex.App.--Austin Mar. 2, 2006, no pet.)(not designated for publication)(indicating that an isolated misstatement or temporary moment of confusion is not outside the bounds of reasonable assistance and is insufficient to deem counsel's assistance ineffective). We overrule Issue Two and affirm the judgment of the trial court below.

August 24, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

16